THE CHICAGO LUMBER COMPANY v. THE DES MOINES DRIVING PARK, *et al.*, Defendants; J. K. & W. H. GILCREST, *et al.*, Appellees, THE DES MOINES SAVINGS BANK, *et al.*, Appellants.

**Mechanic's Lien:** DESCRIPTION IN STATEMENT. *Notice.* Under Acts, Sixteenth General Assembly, chapter 100, section 6, which requires a statement of lien to contain a "correct" description of land, a statement which described land by lots and blocks by which they were known in a vacated plat is sufficient.

SAME. But such description does not create a lien on land two-thirds of which was platted as streets and alleys in said vacated plat.

NOTICE. One who becomes an incumbrancer after the statutory time for filing a mechanic's lien has expired, may be "an innocent purchaser" and have priority against a claimant whose lien statement fails to describe land covered by the incumbrance, though the incumbrancer knew that the claimant had the right to a lien upon such land. Knowledge that another has a right to a thing does not cure his omission to properly assert that right.

PRIORITY. Chapter 100, Acts Sixteenth General Assembly, provides that a failure to file a statement of lien within the prescribed time defeats the lien, only, as to persons *whose rights accrue after the expiration of the statutory time, and before a claim for lien is filed. Held.* One of several persons entitled to a mechanic's lien cannot obtain priority over his fellows by first filing a statement which contains a correct description of lands which the statements of others omit. His rights did not *accrue* during the period covered by the statutory exception.

SAME. A judgment holder was made a party to a mechanic's lien foreclosure. The mechanic's lien statement omitted some land upon which the judgment was a lien. In such foreclosure suit, and after the time for filing mechanic's lien statement had expired, an amendment was filed, including the omitted land in the lien claimed. The judgment holder sold said land on execution and became its purchaser. *Held,* such amendment was not such notice as to deprive the execution purchaser of the standing of a purchaser "without notice."

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

MONDAY, JANUARY 27, 1896.

*Cummins & Wright* for appellants.

*Barcroft & McCaughan, Guernsey & Bailey, Berryhill & Henry, Smith & Morris, Merrit & Bunting, Read & Read, St. John & Stevenson,* and *C. E. Byrum* for appellees.—*Reversed.*

KINNE, J.—I. The record in this case is somewhat lengthy and complicated. We shall endeavor to state the material facts, as gathered from the pleadings and evidence: The Des Moines Driving Park is a corporation, and was organized in 1891. It acquired by purchase about one hundred and twelve acres of land, part of which was conveyed to it by F. M. Hubbell, which consisted of certain large lots of official plats. Another part consisted of certain lots and blocks in the recorded plat of what was known as "Haines Park," the title to which was acquired by the driving park from another source, and also certain lots and blocks in the recorded plat of what was known as "West End." Part of the entire tract above described had been platted as a part of West End and of Haines Park; but in March, 1892, the driving park vacated said plats, and the land covered by the descriptions by lots and blocks as conveyed to the driving park, as well as what had, before said vacation, been streets and alleys, was all embraced within the inclosure hereafter mentioned, and altogether constituted the one hundred and twelve acres,—the driving park. In 1892 this entire tract was, by the driving park, fenced in a common inclosure. A race track was constructed; an

amphitheater, barns, sheds, stables, and other improvements erected,—all at a cost of some fifty thousand dollars. A large part of these erections and improvements were upon the tract of ground of which the plat had been vacated; also, upon the ground which had formerly been platted as streets and alleys. In the prosecution of the driving park enterprise a large indebtedness was created, and the company failed in August, 1892. Thereupon the following parties filed statements for mechanic's liens on August 19, 1892 viz.: George E. King Bridge Company, J. K. & W. H. Gilcrest, J. D. Seeberger, A. Madole, Getchell & Martin Lumber & Manufacturing Company, J. H. Queal & Co., St. John & Barquist, Frank Pelton, Carter Bros. Co. and M. R. Laird. And on August 20, 1892, the Des Moines Manufacturing & Supply Company filed a statement for a lien, and Jubb Bros. filed a like statement on August 25, 1892. November 7, 1892, the defendant the Des Moines Savings Bank recovered a judgment against the defendant the Des Moines Driving Park for fourteen thousand three hundred and fifty dollars, and under said judgment all of the driving park's property was thereafter sold under an execution issued thereon, and bid in by the bank for five thousand dollars. In the fall of 1892 independent suits were instituted for the foreclosure of their liens by the George E. King Bridge Company, J. K. & W. H. Gilcrest, Chicago Lumber Company, Getchell & Martin Lumber & Manufacturing Company, St. John & Barquist, Frank Pelton, M. R. Laird, and Jubb Bros. In the suit of the Chicago Lumber Company, all of the lien holders were made defendants, and such of them as had not brought independent suits filed cross petitions for the purpose of foreclosing their liens. All of these lien-foreclosure suits were consolidated, and a decree entered providing: First. For the foreclosure of certain mortgages, covering a part of the driving park property, as to

which no question is now made. Second. Rendering judgments in favor of the respective lien holders, and establishing their liens against the property of the driving park, and fixing the priority between the said several lien holders. Third. It decreed that the liens of the defendants the Des Moines Savings Bank and F. C. Hubbell were junior and inferior to the liens of said mechanic's lien holders, and ordered the property sold, and the proceeds to be applied as follows: First, in payment of costs; second, to the payment of the several mechanic's lien judgments, in the order of priority as fixed in the decree. The decree is very elaborate, and contains many provisions not necessary to be recited here. All parties excepted to the decree. January 3, 1893, F. C. Hubbell recovered a judgment against the driving park, upon which no sale has been had. The defendants the Des Moines Savings Bank, F. C. Hubbell, Frank Pelton, M. R. Laird, and Jubb Bros. only appeal.

II.  As we understand this record, the appellants, Pelton, Laird, Jubb Bros., Des Moines Savings Bank, and F. C. Hubbell, claim liens, in the order in which we have named them, prior and superior to all other liens growing out of the statements filed, upon all of the property of the Des Moines Driving Park which was formerly embraced in what was known as "Haines Park" and "West End," and especially as to so much thereof within said Haines Park and West End as was formerly embraced within the streets and alleys of said additions, which said additions, or the plats thereof, so far as the same are embraced within the driving park, have been vacated. The only matter in controversy on this appeal is as to whether appellants or appellees have the prior lien upon so much of the driving-park property as was formerly embraced within Haines Park and West End. Appellants claim that their liens upon said property are prior and

superior for the reason that the statements for mechanics' liens by appellee lien holders do not describe said property, or claim a lien thereon; that no such lien was claimed upon said property until after appellants had filed their claims, and after the bank had recovered its judgment and sold the property under execution issued thereon, and after Hubbell had recovered his judgment.  The mechanics' lien statements which were filed in point of time prior to those of appellants Pelton, Laird and Jubb Bros. described the property in various ways.  In all of them the land formerly embraced within Haines Park and West End was described as lots and blocks in Haines Park and West End, giving the numbers which they bore before that part of the plats of said additions which was embraced within the driving park had been vacated.  In none of them was there any specific description of the land in controversy, which was formerly streets and alleys in these additions.  The only reference to the property upon which a lien was asked, except the description by lots and blocks as aforesaid, was the following, in the Gilcrest statement:  "A certain pleasure ground and race track, including all fences, sidewalks, sheds, stables, barns, amphitheaters, and all other buildings and improvements of whatever kind, and the following land upon which the same is situated."  Seeberger's statement contained the following:  "And the barns, amphitheaters, fences, platform, and other buildings and improvements built and erected thereon." Madole's statement asks that his lien "be established and enforced against the buildings, improvements, erections, race track, and lands aforesaid."  The statement of the Chicago Lumber Company claimed a lien upon the real estate described, "and stables, fences, grand stand, and other improvements built and erected thereon."  Queal & Co. claimed a lien upon the land,

"and all buildings, erections, and improvements, of every kind and nature, including stables, fences, amphitheaters, and other buildings built and erected thereon." The Getchell & Martin Lumber and Manufacturing Company claimed a lien upon the land, "and the stables, fences, grand stand and other improvements built and erected thereon." These descriptions, drawn from several of the lien statements, will suffice to show what reference to the property sought to be charged with a lien the several lien statements contained, in addition to a description of the lots and blocks of the additions which had theretofore been vacated. It appears that during the trial of the case an amendment was filed by Seeberger to his cross petition, wherein it was alleged that the premises for which he furnished materials, and upon which he claimed a lien, included all of the tract of ground of the Des Moines Driving Park, "including all lots, blocks, streets, and alleys in Haines Park and West End included within these boundaries." Similar amendments were also filed by the Getchell & Martin Lumber and Manufacturing Company and by Queal & Co. Appellants' contention is thus stated in their brief: "First. For the Des Moines Savings Bank, we contend, that as to it the several liens of the appellees are limited to the property described in the statements and petitions of foreclosure, for the reason that, more than ninety days after the liens of the appellants accrued, it became an innocent purchaser of that part of the property of the Des Moines Driving Park which was not described in the said statements and petitions. Second, For F. C. Hubbell, we contend that, more than ninety days after the liens of the appellees accrued, he became an innocent incumbrancer, and that, as to him, the liens of appellants are restricted to the property described in the said statements and petitions. Third. For the appellants

Pelton, Laird and Jubb Bros., who are holders of mechanics' liens, we contend that they were, as the appellees were, entitled, under the statute, to a lien upon the whole property of the Des Moines Driving Park; that they were the first claimants to file statements correctly describing the property; and that, as between them and their fellow lien holders, priority must be determined by the dates upon which statements containing true descriptions were filed,—that is to say, with respect to the property described in appellants' statements, not described in appellees' statements, appellants are entitled to priority of lien."

III.   We first proceed to determine as to the sufficiency of the description in the lien statements filed by appellees.   If said statements can properly be said to describe, identify, and claim a lien upon all of the land of the driving park which was formerly a part of Haines Park and West End additions, including the streets and alleys originally embraced therein, then the decree below was right.   The question is not what the several lien holders might claim a lien upon, but what did they in fact claim a lien upon?   Under the law, there is no doubt that all of the mechanics' lien holders, might have taken the necessary steps to have secured a lien upon all of the land embraced within the driving park, as well as all improvements thereon.   Acts Sixteenth General Assembly, chapter 100, sections 3, 4 and 6. Section 6 of said chapter provides that any one wishing to avail himself of the provisions of the chapter, "shall file with the clerk of the district court   *   * *   a just and true account   *   *   *   and containing a correct description of the property to be charged with the lien, and verified by affidavit."   It then provides within what time said statement must be filed, and says:   "But a failure or omission to file the same within the periods last aforesaid, shall not defeat the

lien, except as against purchasers or incumbrancers in good faith without notice, whose rights accrued after the thirty or ninety days, as the case may be, and before any claim for the lien was filed." If it be conceded that, in order to claim and preserve a lien as against appellants, it was necessary for appellees to file such a lien statement as correctly described the property, the question is, have they done so? As to that portion of the driving park which was formerly lots and blocks in Haines Park and West End, we have no doubt as to the sufficiency of the description in the lien statements of appellees. It should be remembered that, when the driving park acquired its title to so much of the tract which it afterward inclosed and used as a park as was situated in Haines Park and West End, the plats of said additions were in full force. Afterward, and prior to the filing of the lien statements, these plats were by the driving park vacated. In the lien statements this land is described as it was in said plats, and as it was in the deeds to the driving park, as certain lots in certain blocks in Haines Park and West End, giving the proper numbers of each. It is true that the statute provides that these lien statements must contain a "correct" description of the property which it is sought to charge with the lien. But the statute does not undertake to define what shall be considered as such a description. Manifestly, any description of the property which can be said to charge those interested in the property, or who may thereafter become interested in it, with notice as to the particular tract of land sought to be charged with the lien, must be held to be a correct description, and in full compliance with the statute. The question then is, is the description of this land (which was formerly lots and blocks) such as to point out and designate the very land as to which the liens are claimed? In other

words, when an addition has once been legally platted, and thereafter the plat vacated, may such land be correctly described by giving the numbers of the lots and blocks as they formerly existed? We have no doubt that it may be thus described. The vacation of the plat, while it may thereby render it of no legal effect as a plat, does not obliterate it so that it may not be resorted to for the purpose of describing the land formerly embraced within it. It does not prevent said land from being thus identified. The plat, though canceled, still remains of record, and renders a description based upon it easily capable of identification. The description, then, in the several lien statements of appellees, is in all respects a correct and sufficient description as to lots and blocks formerly constituting a part of Haines Park and West End, and afterward, constituting a part of the driving park.

IV.   Do the lien statements of appellees describe or identify the ground formerly occupied and platted as streets and alleys in Haines Park and West End? It is contended that the general references to the property sufficiently describe this ground which was formerly streets and alleys. The trouble is that the land is described in each case substantially as follows: "Also, all the lots in blocks thirty-three (33) and thirty-four (34) in plat of West End, in the city of Des Moines, Iowa; also, all the lots in blocks seventeen (17), eighteen (18), and twenty-one (21) of the plat of Haines Park, in the city of Des Moines, Iowa." Here is a definite description of certain land, and, by its very terms, it excludes the land formerly occupied and platted as streets and alleys. Unless, therefore, the land which was formerly streets and alleys is identified by means of other language used, there is no description or identification of such land. Now, the description in the Gilcrest statement is the

broadest of any. It claimed a lien "to secure the same on a certain pleasure ground and race track, including all fences, sidewalks, sheds, stables, barns, amphitheaters, and all other buildings of whatsoever kind, and the following described land on which the same are situated." Then follows a description of these lots and blocks before mentioned. Thus, it will be seen that the improvements upon which the lien was claimed were such as were situated upon these lots and blocks, and other parts of the ground, as to which there is no contention. The Gilcrest statement is the most favorable one for appellees, and hence we speak of it only. How can it be said that a description which limits the lien claimed to certain improvements situated upon certain described land, and to that land itself, can tend to identify or describe other land, upon which like improvements may exist, and which is the property of the same association? In our judgment, there is nothing in the descriptions in these several lien statements which in any way describes or identifies the land formerly used and platted as streets and alleys, or to indicate that a lien was to be claimed against it. The whole description locates all of the improvements upon which the lien is claimed as being on the lots and blocks described, leaving no room to claim that such general words were used as might be held sufficient to identify the land formerly platted as streets and alleys as being also claimed to be subject to the lien.

V. As to the appellant lien holders Pelton, Laird, and Jubb Bros.: As against the owner, the filing of a statement containing an insufficient description of the property sought to be charged with a lien, or the failure to file any statement at all, would not defeat the lien. *Kidd v. Wilson*, 23 Iowa, 464; *Evans v. Tripp*, 35 Iowa, 371; *Bissell v. Lewis*, 56 Iowa, 240 (9 N. W. Rep. 177); *Lumber Co. v. Bowman*, 77 Iowa, 709 (42 N. W. Rep.

557); *Neilson, Benton & O'Donnel v. Iowa East R. Co.*, 51 Iowa, 184, (1 N. W. Rep. 434.) It is also held in the above cases that the failure or omission to file the statement within the time provided will not defeat the lien, "except as against purchasers or incumbrancers in good faith, without notice, whose rights accrued after the thirty or ninety days, as the case may be, and before any claim for the lien was filed." And that is the statutory provision. Chapter 100, Acts Sixteenth General Assembly. Now, if it be conceded that appellants Pelton, Laird, and Jubb Bros. were incumbrancers, in good faith and without notice, they are not within the exception of the statute, because it appears that their rights accrued within the ninety days; and a lien, even though no statement is filed within the ninety days, is good, as against incumbrancers, unless their rights "accrued after the * * * ninety days, * * * and before any claim for the lien was filed." Therefore, as between appellees, and appellants Pelton, Laird, and Jubb Bros., the latter lien statements are entitled to no relief as against the former.

VI. As to the claim of F. C. Hubbell: His judgment was rendered more than ninety days after the time expired within which the several lien claimants might file claims for liens, and before any claims for liens were in fact filed, as against the land formerly platted as streets and alleys in Haines Park and West End. It is therefore a lien upon such land prior to the claims of all of appellees, if he was an incumbrancer in good faith, and without notice. As we understand it, it is not claimed that he was not an incumbrancer in good faith, but the claim is made that he had notice of appellees' claim to a lien, and hence is not within the exception provided in the statute. It is conceded that Mr. Hubbell knew that appellees had furnished materials or

performed labor for which they were entitled to liens upon the entire property of the Des Moines Driving Park. He knew the character and extent of the property of the driving park. He knew that the liens actually filed by appellees did not in fact describe or cover the streets and alleys spoken of. Now, it cannot be claimed that the words "without notice," in the statute, refer to the fact that by law a lien was given to appellees. The law provided that appellees might have a lien upon all the driving-park property, but, to effectuate that lien, they must, as against such incumbrancers, take certain steps. The notice, then, which the statute speaks of, is notice, not of the right of a lien given by the statute, but that the party is claiming a lien upon the property in controversy, under the statute. Now, Hubbell had no such notice. We have already said that these lien statements did not claim a lien upon the ground which was formerly embraced within the streets and alleys; that they did not describe that land; hence, Hubbell could not have been charged with notice of a claim not in fact made by the lien statements. The fact that they might have claimed a lien upon this land, formerly streets and alleys, is of no force in determining this question of notice. The question is, what did they claim? The statements filed show clearly that they did not claim a lien upon the land formerly streets and alleys in Haines Park and West End. The notice, if any, to Hubbell, cannot be claimed to be broader than the claim of appellee lien holders, as evidenced by these lien statements. We conclude, therefore, that Hubbell was entitled to a lien upon the land now embraced within the driving park which was formerly streets and alleys in Haines Park and West End.

VII. As to the claim of the Des Moines Savings Bank: What has been said as to Hubbell is in part

applicable here.   The bank became a purchaser in good faith of the ground formerly used as streets and alleys, which formerly were a part of Haines Park and West End.   It is claimed that as some of the lien statements were amended during the foreclosure proceedings, claiming a lien upon the ground formerly streets and alleys, and as appellees in said suits were claiming the foreclosure of their liens as against all of the property of the driving park, therefore the bank had notice such as is contemplated in the statute, and hence can claim no liens on this ground, formerly streets and alleys, by virtue of its purchase under execution thereafter.   If there was anything in the lien statements which were the foundations of the foreclosure suits, upon which to base a claim for a lien upon these streets and alleys, there might be force in appellees' contention. But, as we have seen, there is not.   The bank knew that as against it, a subsequent purchaser, the liens of appellees could not be extended in the foreclosure suits to embrace property not described in the lien statements.   Hence, as the lien statements imparted no notice of a claim to a lien upon these streets and alleys, it was a purchaser without notice, and clearly within the exception of the statute.

VIII.   Appellees contend that they had a lien upon these streets and alleys superior to that of Hubbell and the bank, by force of the statute itself, and that the lien of the material man or laborer is good, as against a subsequent lien holder or purchaser, to the same extent that it is good against the owner.   It is not disputed that the statute (chapter 100, Acts Sixteenth General Assembly) made all of the driving-park property subject to the appellees' lien.   But, to avail themselves of that right, they must pursue the course pointed out by the statute.   And a failure so to do, by not filing the statutory statement, will defeat

their lien, as against purchasers and incumbrancers in good faith, and without notice. Hence, we have a case, as to these streets and alleys, where no statement for a lien was filed. It is not a case of a defective description as to that land, but of no description. We do not think that, by virtue of the statute allowing such a lien, any notice was conveyed to these purchasers or incumbrancers. If, in such a case, one who becomes an incumbrancer or purchaser after the expiration of the ninety days, and before any lien is in fact filed against the property in controversy, is charged with notice of the rights of parties to claim mechanics' liens by virtue of the statute allowing such liens, then the statute, which says, "a failure or omission to file the same shall not defeat the lien except as against purchasers or incumbrancers in good faith without notice," etc., is of no force whatever, so far as the provision relating to notice is concerned. Under such a construction of the law, every such purchaser or incumbrancer would at all times, until the period of the statute of limitations had run, be charged with notice of the rights of lien claimants by virtue of the statute itself which gives the right to the lien, regardless of the fact that such parties had never taken any steps to avail themselves of the benefits of the statute. Such is not the law.

IX. Our conclusion, then, briefly stated, is that as to the appellant lien claimants Pelton, Laird and Jubb Bros., the decree below was correct, for reasons heretofore given; that, as to appellants Hubbell and the Des Moines Savings Bank, the decree of the lower court was in all respects correct, except that it erroneously found that appellee lien holders had a prior lien upon the ground formerly platted as streets and alleys, and embraced in Haines Park and West End, to the liens of Hubbell and the bank. The liens of appellants the Des Moines Savings Bank and F. C.

Hubbell, upon that particular ground, are prior and superior to the liens of appellees. The motion of appellees to dismiss the appeal is overruled. The cause is reversed, and remanded for a decree in conformity with this opinion.—REVERSED.