[L. A. No. 51.   Department One.—September 16, 1896.]

MARIA S. DE SANCHEZ, RESPONDENT, v. GRACE METHODIST EPISCOPAL CHURCH, APPELLANT.

MARRIED WOMEN—DEED—SEPARATE PROPERTY.—Land conveyed to a married woman by a deed reciting that it was conveyed "as the separate estate of the grantee," is presumptively her separate property and not community property.

ID.—EXCHANGE OF LANDS.—Land conveyed to a married woman, in exchange for other land which was owned by her, becomes her separate property.

DEED—DESCRIPTION—REFERENCE TO MAP—HIGHWAY.— A deed specifically describing the property conveyed as certain numbered lots on a designated map only carries the land delineated on such map as included within the boundaries of the lots; and land adjoining such lots which once formed part of a highway, but which had been vacated as such at the time of the execution of the deed, does not pass by the conveyance.

RELIGIOUS CORPORATION—POSSESSION—PRESUMPTION.—A religious society organized as a corporation, which assumes the actual use and control for the purposes of a church of premises which prior to its incorporation had been deeded to trustees of the religious society which formed the corporation, will be presumed to hold possession of the premises as a corporation, although no formal act or resolution of the corporation for taking possession is shown, and although it controls the premises through agents other than the legal officers of the corporation.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. W. H. CLARK, Judge.

The facts are stated in the opinion.

*W. Pollard, Henry Bleecker,* and *Cochran & Williams,* for Appellant.

*S. M. White, R. H. F. Variel, Henry T. Gage,* and *George D. Blake,* for Respondent.

BRITT, C.—Action of ejectment, begun March 11, 1886, for a parcel of land in the city of Los Angeles. Judgment was for plaintiff. Appellant contends that plaintiff never had title in the disputed premises; that if she did acquire such title yet it was lost by her conveyance thereof, or by adverse user; and lastly that it, the defendant, never ousted the plaintiff or had possession of the premises.

1. In April, 1872, the city council of Los Angeles passed an ordinance vacating portions of a highway in said city, commonly known as Messer's lane (styled in the ordinance "old First street") and establishing instead thereof a new street called First street. Plaintiff then owned a number of lots including those designated

as lots 23 and 24—the latter a fractional lot—in block 4 of the "Sanchez tract," which lots and block abutted on the north side of Messer's lane; the "Sanchez tract" extended thence northerly, having an area of fourteen acres, intersected by other streets, and bounded on the east by Alameda street. The land on the south side of Messer's lane opposite plaintiff's tract was owned by T. D. Mott and Albert Johnson. The new street established by said ordinance was laid out a little to the south of said lane, so that there intervened, between the south line of plaintiff's said lots and the north line of First street thus fixed, a piece of land which included the whole of the former lane in that part of its course, and also a narrow wedge-like strip off the Mott & Johnson tract. April 26, 1872, said Mott & Johnson executed a deed to plaintiff conveying, "as the separate estate of the grantee," their interest in the whole of such intervening parcel; and on May 3, 1872, the city conveyed to plaintiff its "right, title, claim, and demand" in and to the same premises. The deed of the city recited a consideration of one dollar paid with the grantee's "separate funds and for her separate use"; though it was really the result of exchange for other land of plaintiff, contained in the new street, conveyed to the city about the same time by her deed, in which her husband, Tomas Sanchez, joined. The premises in controversy on this appeal are included in the calls of said deeds of the city and Mott & Johnson to plaintiff; and are bounded north by said lots 23 and 24, south by First street, and on the other sides, respectively, by the west line of lot 23 and the east line of lot 24, if those lines were produced to First street.

It is argued that the title became vested in plaintiff's husband as community property. *Prima facie*, the deed of Mott & Johnson to Mrs. Sanchez, which conveyed at least that part of their tract between the new street and the vacated lane, made the estate granted her separate property (*Swain* v. *Duane*, 48 Cal. 358); and no attempt was made to rebut the presumption. Whether the deed

from the city, reciting a consideration "paid with her own separate funds, and for her separate use," is attended with the like presumption need not be inquired; it is conceded that the title to all the lands mentioned was originally in the city of Los Angeles, as successor of the Mexican pueblo of that name, and confirmed to it by patent of the United States; and if, as appellant contends and respondent virtually concedes, the title in the soil of Messer's lane vested in the owners of the abutting lands upon the vacation of that street, or if it then reverted to the city, in either case the title accruing to plaintiff, whether as abutting owner or as grantee of the city, was received in exchange for other land owned by her and conveyed to the city, and unquestionably became her separate estate.

2. On March 29, 1875, plaintiff made a deed to one Leonis, and appellant claims that by this deed she divested herself of title in the demanded premises; its descriptive portion was as follows: "All those certain lots of land . . . . being parts of that tract of land situate on the east side of Alameda street in said city, known as the Sanchez tract, and lots 11, 12, 13, 14, 21, 22, 23, 24, in block 4 of said tract, as per subdivision map of said tract made . . . . in April, 1871." The map referred to did not exhibit the land in suit as part of the Sanchez tract; said lots 11, 12, 13, 14 fronted north on Banning street and abutted south on the other four lots. Admitting that after the lane was vacated the land in it was considered by plaintiff as part of the Sanchez tract, yet it was certainly an unsurveyed and unplatted part, and there is no language in the foregoing description apparently designed or sufficiently definite to carry any land not delineated on the map. A more serious question is whether the land in Messer's lane to the middle of it did not become, when the lane was vacated, by a sort of accretion, parcel of the abutting lots so as to pass with them by the deed to Leonis without further designation. (See *Challiss* v. *Depot etc. Co.*, 45 Kan. 398; *Atchison etc. R. R. Co.* v. *Patch*, 28 Kan. 470—cases turning upon a pe-

culiar statute.)   We think no such rule can obtain in this case; the conveyance of land bounded by a highway is presumed to carry title to the median line of the way, but there is no reason in a like presumption to include land which has formed, but forms no longer, part of a highway; in 1875, when the deed was made to Leonis, the soil of the former lane, together with the strip off the Mott & Johnson tract, formed a body of land some seventy feet in width lying between lots 23, 24, and First street, and wholly free from the legal incidents which pertain to the soil of a highway; there is, therefore, no more reason to say that any part thereof passed under the designation of those lots in the deed than for extending the scope of that description to adjacent land—if such there had been—which never was impressed with the highway use; more especially since neither party claims that plaintiff owned the fee in any part of said lane before its vacation as a highway.   (*Harris* v. *Elliott*, 10 Pet. 25, 54.)

Defendant pleaded certain provisions of the statute of limitations.   (Code Civ. Proc., secs. 325, 326.)   We have been unable to find in the record any sufficient evidence that the land sued for, whether alone or with other land, was for any period of five years before the commencement of the action protected by a substantial inclosure, or was usually cultivated or improved; so that those sections are not available as a defense.

3. In 1882, J. A. Forthman and W. B. Bergin, successors in interest of said Leonis, made a deed to seven named persons, called in the deed "trustees of the Grace M. E. Church," of premises described thus: "Lot numbered 23 and fractional lot 24 in block 4 of the Sanchez tract, . . . . with its continuance up to the line of First street added thereto by the city council of Los Angeles by straightening First street," etc.   In 1883 the church —that is, as we understand the evidence, the professed Christian society called the Grace Methodist Episcopal Church, governed locally by a quarterly conference consisting of official members, and acting as regards fiscal

matters through a board of stewards—erected an edifice
for public worship on the land described in this deed,
including the premises now in dispute.  Subsequently,
in December, 1885, the corporation, appellant here, was
formed under sections 593–603 of the Civil Code.  Its
constating instruments show that it was created—among
other purposes—to take charge of the building, property,
and temporalities of the church; that its principal place
of business was to be in the church building; that the
trustees to have the management of its affairs were seven
in number, and were the same persons styled trustees in
said deed of Forthman and Bergin; and that such trus-
tees were elected for the purpose of forming the corpo-
ration at a meeting of the members of the quarterly
conference of said church.  Such title as passed by the
deed of Forthman and Bergin has never been conveyed
to the corporation.

It is provided in section 595 of the Civil Code, that
such a corporation may hold all the property of the
association owned prior to incorporation or acquired
thereafter in any manner, and transact all business rel-
ative thereto.  Appellant claims that it has never acted
under this provision of the statute; that the seven per-
sons named as grantees of Forthman and Bergin hold
whatever title passed by that deed, and were in posses-
sion of the premises when the action was commenced;
that the corporation " had nothing to do with either the
purchase or occupation of said land."

We are concerned only to determine who was the
actual occupant of the premises when the suit was
brought.  It must be conceded that no avowed taking
of possession, nor assumption of control of the property
by formal act or resolution of the corporation, is shown
in the record.  But we do not think this was necessary.
It was the ecclesiastical society constituting the church,
not the seven persons who signed the articles of incor-
poration, that became a legal entity with power to
transact all business relative to the church property;
the trustees or directors were but its agents in that be-

half.  (Civ. Code, secs. 593, 595, 603; *Robertson* v. *Bullions,* 11 N. Y. 243; *People's Bank* v. *St. Anthony's etc. Church,* 109 N. Y. 512.)  It does appear that the church had a pastor to whom it paid a salary, that it collected funds and furnished the building and kept it in order; it is fair to infer that it was conducting the ordinary ministrations of the church in the ordinary way by its pastor, board of stewards, sexton, etc.—and for these purposes used the land in question as a place of worship.  The society that was doing these things had become incorporated for the express purpose of having the property in charge, and no longer existed as a noncorporate association.  We must, therefore, attribute such acts of possession to the corporate body which had legal power to permit and authorize them, rather than to a concourse of trespassers, none of whom individually had any right to direct the functions of the church in the utilization of the property.  That the church permitted its taxes to be paid and its temporal affairs to be managed by a board of stewards, instead of the board of directors or trustees mentioned in the statute and the articles of incorporation, cannot affect the matter; it was the corporation which was created to control the temporalities of the church, not the board of trustees, and it is not important by what name it called its agents for that purpose.  We do not mean to hold that the fact of incorporation of a religious or benevolent body necessarily estops a denial that the property enjoyed and used by it is possessed by the corporation; but only that the presumption of such possession is so strong as not to be rebutted by evidence of mere organic corporate inactivity, such as appears in this instance.  It was said by a respectable court that a church edifice occupied for the purpose of religious worship by a society which had become incorporated, and not used in any other way, or by any particular individual, must "from the very nature and necessity of the case be adjudged to be in actual occupancy of the corporation." (*Lucas* v. *Johnson,* 8 Barb. 249).  It is not necessary in the present case to

press the doctrine so far. The order denying a new trial should be affirmed; a result to occasion, under the circumstances appearing, some degree of regret; but it serves to accentuate the propriety of investigating the title to realty before, rather than after, undertaking its improvement.

For the reasons given in the foregoing opinion the order denying a new trial is affirmed.

HARRISON, J., VAN FLEET, J., GAROUTTE, J.