[L. A. Nos. 5873, 5874. In Bank.—March 28, 1921.]

## JOHN FRANCIS ANDERSON, Respondent, v. CITIZENS SAVINGS AND TRUST COMPANY (a Corporation), et al., Appellants.

[1] STREET LAW — PROCEEDINGS UNDER ACT OF 1903 — SALE FOR NON-PAYMENT OF ASSESSMENT—VOID DEED TO PURCHASER—FAILURE TO GIVE PERSONAL NOTICE TO REDEEM TO RECORD OWNER.—A deed by the proper public authority to a purchaser of property sold for non-payment of a street assessment under the act of 1903 (Stats. 1903, p. 376), as amended in 1909, 1911, and 1913, is void, where notice to redeem, as provided by section 28 of the act, was not served upon the person in whom the legal title appeared of record, as provided by subdivision 7 of section 33 of such act.

[2] EMINENT DOMAIN — JUDGMENT—OWNERSHIP OF CONDEMNED LAND —DEFENDANTS NOT CLAIMING ADVERSELY — OWNERSHIP OF OTHER LAND NOT ADJUDICATED.—A judgment in a condemnation suit that one of the defendants is the owner of the land condemned is not an adjudication that such defendant is the owner of the whole tract of which such land is but a part, where the issue of ownership of the whole tract is not presented, as between the defendants.

[3] ID.—NONAPPEARANCE OF DEFENDANTS — JUDGMENT CONCLUSIVE.— A judgment in a condemnation suit that one of the defendants is the owner of the condemned property is conclusive upon the defendants who fail to appear and assert their claim in such action.

[4] BOUNDARIES — LAND ABUTTING ON STREET — DEED—OWNERSHIP TO CENTER OF STREET.—Where land is conveyed by a description which bounds it by a street and the grantor is the owner of the fee in the street, as he is presumed to be, the real boundary line of the property is not the side line of the street but its center line, unless it clearly appears to be the intention to make the side line the boundary.

---

4. Description with reference to highway as carrying title to center or side of highway, note, 2 A. L. R. 6.

Deed bounding land by private way as carrying title to the middle thereof, note, 18 Ann. Cas. 74.

Right of purchaser of property according to plat to easements in streets or ways indicated thereon, other than those on which the property abuts, note, 28 L. R. A. (N. S.) 1024.

Location of division line under conveyance of land as affected by street, note, 6 A. L. R. 1165.

[5] ID.—REFERENCE TO MAP—LOT BOUNDED BY STREET.—Where land is described in a conveyance as a lot shown on a recorded map, and the map shows the lot to be bounded by a street, the real boundary line of the property is the center line of the street, unless it clearly appears to be the intention to make the side line the boundary.

[6] ID.—MAP SHOWING EXISTING AND NOT ABANDONED STREET—EFFECT OF CONVEYANCE.—Where land is described in a conveyance as a lot shown on a recorded map, and the map shows the lot to be bounded by a street, a street is created as between the grantor and the grantee, regardless of whether or not there is an existing dedication as between the grantor and the public.

[7] ID.—ABANDONMENT OF STREET — OWNERSHIP TO CENTER LINE.—Where land is described in a conveyance as a lot shown on a certain map, and the map shows the lot to be bounded by a street, the fee to the center line of the street is thereby conveyed, in the absence of a clear showing of a contrary intention, regardless of the fact that such street has been previously abandoned as a public street.

[8] ID.—INTENTION OF GRANTOR—EVIDENCE—INCOMPETENCY OF TESTIMONY.—Where a deed describes the property as being bounded by a street, the grantor's testimony that she did not intend to convey the land in the street is wholly incompetent and insufficient to overcome the rule of construction that a grantee under such a deed takes to the center of· the street, unless it clearly appears to the contrary.

[9] DEED—CONSTRUCTION.—In case of doubt a deed is to be construed in favor of the grantee except as to reservations or other provisions which it may contain for the benefit of the grantor.

APPEALS from judgments of the Superior Court of Los Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

C. A. Stice for Appellants.

Harold E. Thomas and George W. MacLellan for Respondent.

OLNEY, J.—Two actions to quiet title were tried together in the court below. As the actions were originally brought, there were a number of parties, and the parties plaintiff and defendant were not the same in each, but there occurred such disclaimers, transfers of interest, and shifting of posi-

tion that at the time of trial the controversy had in each case been reduced to one between J. F. Anderson, whom we may call the plaintiff, and Citizens Savings and Trust Company, a corporation, whom we may call the defendant, each claiming to be the owner of the property involved, the latter as trustee for two minors by the name of Lempertz. Judgment went for the plaintiff in the court below in each action, and the defendant appeals. Both actions present the same questions and, for purposes of discussion, may be treated as one.

There is no dispute as to the material facts. It appears that one J. G. Griffiths was originally the owner of a considerable tract, including the land in controversy. He subdivided the tract into blocks and lots, with streets, and recorded a map of the tract as so subdivided. This map showed lot 1 in block 7 as the lot forming the easterly end of the block and extending the whole width of the block, so that on its easterly side it was bounded by a street called Vandal Street, and on its northerly and southerly ends by streets called Grand and Los Feliz Avenues, respectively. Each of these streets was shown as sixty feet wide, and Grand and Vandal, with which alone we are particularly concerned, were shown as and were in fact parts of the subdivided tract.

On June 29, 1889, Griffiths conveyed the lot mentioned to one Martin, describing it by lot and block number, as shown on the subdivision map. Since Griffiths was the owner of the fee in the streets, it is conceded that his conveyance of the lot operated to convey as a part of it the fee to the center line of the streets on which it abutted. In 1898, while Martin was still the owner of the lot and of the fee to one-half of the streets upon which it abutted, the two streets on the north and east of the lot, Grand and Vandal, were with her consent abandoned as public streets by order of the board of supervisors of the county. Whether the offer of dedication of them as public streets made by the recording of the map by Griffiths had ever been accepted by the public authorities or by actual user does not appear. There was, however, either an abandonment of them as public streets or else an authorized withdrawal of the offer of dedication made by the recording of the map. The parties have treated it as an abandonment, and we may do so

likewise. It is due to this abandonment that the present controversy arises, the dispute being as to the ownership of the two thirty foot strips on the north and east sides of the lot which comprised the half of the streets on those sides.

In 1911, that is, after the abandonment of the streets, Martin conveyed the lot to one Lempertz by deed likewise describing the property merely by its lot and block number according to the subdivision map, and the most important question in dispute is as to whether this deed operated to convey the thirty foot strips which were part of the adjoining streets as shown by the map. The claim of the plaintiff, who has succeeded to any interest which remained in Martin, is that her deed to Lempertz did not so operate, while the claim of the defendant, who has succeeded to the interest of Lempertz is that it did.

In addition to claiming title on the ground just stated, the plaintiff also claims title to the thirty foot strip which was part of Vandal Street, the street to the east, on two other grounds. The first of these is that this strip was sold to satisfy the lien of a street assessment imposed upon it for the improvement of Los Feliz Street, upon which it abuts at its southerly end, and pursuant to such sale was deeded by the proper public authority to one Colkins, to whose interest likewise the plaintiff has succeeded. The second ground is based upon the following facts: For the purpose of widening Los Feliz Street the city of Los Angeles brought a condemnation suit to condemn a sixty foot strip along the northerly side of that street, which strip included sixty feet off the southerly end of the thirty foot strip which was formerly a part of Vandal Street. Both the defendant and Martin were made parties to the suit, and it resulted in a judgment that the latter was the owner of the portion of the thirty foot strip sought to be condemned and entitled to the compensation for its taking. The plaintiff claims that this judgment was an adjudication of the rights of the defendant and Martin not only in the land condemned but in the whole thirty foot strip, and that this adjudication inures to his benefit as Martin's successor. As these two grounds so claimed by the plaintiff may be easily disposed of, we will discuss them first.

[1] The street assessment proceedings were under the act of March 24, 1903 (Stats. 1903, p. 376, Deering's Gen.

Laws, Act 3928, as amended in 1909, 1911, and 1913). Section 28 of the act provides that after the expiration of twelve months from the date of the sale of any property to satisfy the lien of an assessment under the act, the property may be deeded by the street superintendent, or other corresponding public authority, to the purchaser, but only in case the purchaser has previously given thirty days' written notice to the owner of the property that the property has been sold, that a certain amount is necessary to redeem, and that unless redemption is made within thirty days, application will be made for a deed. The section further provides that such notice must be personally served on the owner if he can be found, and if he cannot, must be conspicuously posted on the property; that an affidavit showing such notice must be filed with the street superintendent; and that he shall make no deed until such affidavit is filed. Such an affidavit was filed preliminary to the execution of the deed under which the plaintiff claims, but it shows on its face, taken in connection with the state of the record title, that the notice given was wholly insufficient. The term "owner" is defined by the act (section 33, subdivision 7) as the person in whom the legal title appears of record. At the time of the notice in question, Lempertz had died, and any interest she had acquired by her deed from Martin had been distributed to the defendant by decree of distribution in her estate, so that it was the latter who appeared of record as the owner of such interest and upon whom the notice had to be served in order to foreclose that interest. The affidavit does not show either personal notice to the defendant or that the defendant could not be found, nor does it show the posting of notice on the property. All that it shows as to the defendant is that notice was mailed to it. The statute requires personal service and not service by mail, and the notice given is plainly insufficient. The affidavit does show personal notice on the administrator of Lempertz's estate and on the guardian of the two minors for whom the defendant held the property in trust, and if the property had been still under administration, or if the title had been in the minors, service upon the administrator or the guardian would have been sufficient under certain further provisions of the statute. But since the property was no longer under administration, and the title to whatever

interest Lempertz had acquired was in the defendant and so appeared of record, notice in the manner provided by the statute had to be given to it. This was not done, and as a consequence the deed is void as to whatever interest the defendant held as the successor of Lempertz.

[2] As to the judgment of condemnation, it was an adjudication that the property condemned belonged to Martin, but it was not an adjudication that any other property belonged to her. It is one of the functions of a condemnation suit to determine as between the defendants who is the owner of the property and therefore entitled to the compensation for its taking, and where it appears on the face of the pleadings that the property sought to be condemned is part of a larger tract, which is claimed adversely to each other by two or more defendants, it may well be that a judgment that one of the defendants is the owner of the property condemned will be an adjudication as to the title to the whole tract of which it is but a part. But nothing of this sort appears here. Martin did not appear in the action at all, and there were no pleadings raising any question of title as between her and the defendant, so that no such question was adjudicated as between them. It is true there are allegations in the complaint as amended which possibly might be taken as presenting an issue as to the ownership of the whole thirty foot strip, so that it may be that as between the plaintiff and the defendants that issue might be taken as adjudicated by the condemnation decree or judgment; but there was no such issue as between Martin and the defendant here, and since there was not, the condemnation judgment was an adjudication as between them of ownership only as to the land actually condemned.

[3] In this connection, however, there is a question incidentally involved and which we may as well determine at this point for the guidance of the parties on a new trial. Martin received under the decree of condemnation some three hundred odd dollars as compensation for the portion of the thirty foot strip which was taken. The defendant, by cross-complaint against her in this action, seeks to recover this amount from her on the ground that it, and not she, was the real owner of the property and entitled to the compensation for its taking. But if the defendant was the real owner, it should have asserted its claim as such in the con-

demnation action. Not having done so, the judgment is final that as between it and Martin it is the latter who was entitled to the compensation.

The plaintiff, then, is not entitled to prevail over the defendant, either because of the condemnation judgment or because of the assessment deed, and we are brought to the question as to the effect of the deed by Martin to Lempertz as the final and controlling question in the case: Did or did not that deed, describing the property conveyed as lot so and so in block so and so as shown by a certain map, operate to convey the land in front of the lot to the center of the streets shown on the map, although such streets had been abandoned as public streets? There can be no question but that the deed would so operate except for the circumstances that the streets had been abandoned, so that the question is, Does such abandonment change what would otherwise be the rule? In determining this question, it is well to ascertain at the outset the reason or theory upon which the rule is based that the fee in the streets would pass by a deed of the streets, if the streets were really there. Section 831 of the Civil Code reads: "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown." Section 1112 of the Civil Code reads: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." Section 2077, subdivision 4, of the Code of Civil Procedure reads: "The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful and there are no other sufficient circumstances to determine it: . . .

"4. When a road, or stream of water not navigable, is the boundary, the rights of the grantor to the middle of the road or the thread of the stream are included in the conveyance, except where the road or thread of the stream is held under another title."

[4] In other words, where land is conveyed by a description which bounds it by a street, and the grantor is the owner of the fee in the street, as he is presumed to be, the real boundary line of the property is not the side line of the street but its center line. This is stated in so many

words in *Moody* v. *Palmer*, 50 Cal. 31, 36, where it is said: "It is well settled that land described in a deed as bounded by a public highway or street, will be considered as extending to the center of the street or highway, *unless it clearly appears that it was intended to make a side line instead of the center line the boundary. The highway is a monument, and in legal contemplation the thread of the highway is the monument, unless a contrary intention clearly appears.* That this is the rule is established by a multitude of authorities." [5] A description of a lot as that shown on a certain map is a description of it as bounded by a street when the map shows it to be so bounded, so that to such a description the same reason and the same rule apply. (*Bissell* v. *New York Cent. R. R. Co.*, 23 N. Y. 61; *Henessey* v. *Murdock*, 137 N. Y. 317, [33 N. E. 330].) Putting it in another way, the fee in the half of the street upon which the lot abuts is in fact a part of the lot, so that a conveyance of the lot conveys the fee in the street as a part of it.

[6] Such being the reason or theory of the rule it would seem that it should make no difference that there is in fact no public street there, provided the conveyance be one which describes the lot as bounded by a street. By such a description a street is created as between the grantor and the grantee, regardless of whether or not there is an existing dedication as between the grantor and the public. This is the settled law of this state. (*Danielson* v. *Sykes*, 157 Cal. 686, [28 L. R. A. (N. S.) 1024, 109 Pac. 87]; *Eltinge* v. *Santos*, 171 Cal. 278, [Ann. Cas. 1917A, 1143, 152 Pac. 915].) Under these decisions, there can be no question but that Lempertz, under her deed from Martin, which, in effect, described the property as fronting on the two streets in question, took the property as between herself and Martin as so fronting, whether there were public streets there or not. Such being the case, there would seem to be no reason for not applying as between them the rule that a conveyance of a lot bounded by a street carries the fee to the center of the street as a part of the lot. It may well be—in fact, it is certain that it would be—that in such a case the grantor would reserve an easement over the fee in the street for its use for street purposes appurtenant to other near-by property which he might retain and to which the use of the street

as such would be of value. But if he retained no such other property, as Martin did not so far as appears, then no easement would arise and the fee of the grantee would be unencumbered.

It may likewise well be that the rule would not apply to the conveyance of a lot bounded by a street where the street is described as abandoned. The final question after all is one as to the intention of the parties, and it would seem not unreasonable to consider such a description as one of a lot bounded by what is now private property, although once a street, so that the real boundary was the line of that property. But it is to be noted that the description in this case is a description of the lot as shown by the map, and the map shows the street as existing and not as abandoned, so that by the description the boundary line of what is conveyed would normally be the center line of the street as shown.

A somewhat analogous situation is presented where the way by which the property is bounded according to the description is a private way only. The decisions differ as to what is the rule in such a case, but the weight of authority is that the fee to the center line of the way passes. (2 Devlin on Deeds, 3d ed., sec. 1025a.) Another somewhat analogous situation is where the conveyance is of a lot or tract described by reference to a map, and the map shows the lot or tract as abutting on a road or street, but such road or street has not in fact been dedicated. Here, likewise, it is held that the fee to the center line of what is shown as a street passes. (*Bissell* v. *New York Cent. R. R., supra; Easton Borough's Appeal,* 81 Pa. St. 85; *Jarstadt* v. *Morgan,* 48 Wis. 245, [4 N. W. 27]; *Freelon* v. *Adrian,* 161 Cal. 13, [118 Pac. 220].)

The authorities in which the exact situation found here is presented are not very numerous and are in confli     and it would be of little purpose to review them. They are collated in the note to *White* v. *Jefferson,* 110 Minn. 276, [124 N. W. 373, 125 N. W. 262], as reported in 32 L. R. A. (N. S.) 778. The question is considered at length and with great care by the United States circuit court of appeals for the sixth circuit in *Paine* v. *Consumers' etc. Co.,* 71 Fed. 626, [19 C. C. A. 99], Judge Taft delivering the opinion. Among the reasons advanced by the opinion in support of the view which it adopts is the following, the force and

good sense of which are sufficient, it seems to us, to resolve any doubt in the matter. It is said (page 632):

"The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases. For a very good statement of the present condition of the law on the subject, reference may be had to the new and valuable work of Mr. Dembitz on Land Titles, section 11. Most of the decisions are rested on some peculiarity of phrase in the description, and it is very difficult to lay down any general rules for determining when the grantor has used language sufficiently explicit to exclude from the operation of the deed the fee to the center of the abutting road. The supreme judicial court of Massachusetts has decided that it is impossible, if any respect is to paid to the principles of the common law of real estate, to hold that a fee in land not described can pass as appurtenant to that which is described. (*Tyler* v. *Hammond,* 11 Pick. (Mass.) 193.) But in the later cases especially that court has used every device of logic to include in the description of a lot by the side of a road the fee to the center of the road. It has treated the highway or private way in the description of a lot as a monument, and in obedience to the rule that a reference to monuments controls descriptions by courses and distances it has carried the lot to the center line of the monument, however clear a departure this may be from the linear or superficial measurements. It would seem from the language of Mr. Justice McLean, speaking for the supreme court of the United States in *Barclay* v. *Howell,* 6 Pet. 512, [8 L. Ed. 498], that the difficulty of passing the fee in the adjoining street as appurtenant to the conveyance of the abutting lot did not weigh so heavily on that court, for he said:

" 'Where the proprietor of a town disposes of all his interest in it, he would seem to stand in a different relation to the right of soil, in regard to the streets and alleys of the town, from the individual over whose soil a public road is established, and who continues to hold the land on both sides

of it. Whether the purchasers are not, in this respect, the owners of the soil over which the streets and alleys are laid, as appurtenant to adjoining lots, is a point not essentially involved in this case.'

"The whole question is most exhaustively discussed by the learned American editors of Smith's Leading Cases (8th ed., vol. 2, p. 178) in the notes of *Dovaston* v. *Payne*, and the conclusion reached that the treatment of the highway as a monument furnishes the means to include the fee to the street center in every case where there is not express language excluding it. (See, also, 3 Kent's Com. 349.) The wisdom of such a construction is manifest, and the great weight of authority sustains it."

*Sanchez* v. *Grace M. E. Church*, 114 Cal. 295, [46 Pac. 2], has been referred to in other jurisdictions and is now cited to us as supporting a contrary rule. There is language in the opinion which taken by itself would justify this view of the case, but which hardly does so when taken in connection with the facts with reference to which it was used. The map in that case did not show the lane on which the lots abutted as a part of the subdivided tract, nor did the grantor own the fee of the lane until after it was vacated as a public way. Moreover, the claim of the grantee was that by a conveyance of the lots, described by reference to the map, there passed not only the fee to one-half of the vacated lane on which they abutted, but the entire width of the lane in front of them, plus land on the farther side of the lane which had never been in a street and which lay between the lane and a new way which had been opened, title to all of which the grantor had obtained by conveyance from its owners after the vacation of the lane. The decision upon these facts cannot, we think, be taken as establishing as the law of this state governing such a case as the present a rule contrary to that which now so strongly commends itself to us. [7] We hold, then, that in the absence of any circumstances showing clearly that the parties intended otherwise, the deed by Martin to Lempertz describing the lot by reference to the map of the tract operated to convey as a part of the lot the fee in Martin to the center line of the streets which the map showed as bounding the lots, although such streets had been previously abandoned as public streets.

We have discussed the case so far as if there was no evidence other than the language of the deed, the recorded map, and the vacation of the streets as public streets, which throws light upon what the parties to the deed really meant should be conveyed by it. The final question in the case is, of course, what was the intent of the parties as expressed in the deed, and the rule which we have been discussing and which we have adopted is after all but a rule of construction, to be followed if, as is usually the case, there is nothing which points plainly and certainly to a contrary intention, but not to be followed if there is. (Code Civ. Proc., sec. 2077.) In the present case, there was other evidence introduced for the purpose of showing the intent of the parties, but it is of little significance. That which is most significant is that the land in the streets was assessed for taxes as a part of the adjoining lots after the streets were vacated and that apparently, for the evidence is very meager, Martin, after her conveyance, allowed it to continue to be so assessed and the taxes to be paid by Lempertz and her successors without concerning herself about the matter. The testimony shows that prior to her deed to Lempertz she was aware that it might be that as an incident of her ownership of the lot and the vacation of the streets in front of it, she had the full ownership of one-half of the streets, and if she conceived that she was dividing what she owned and conveying but a part of it, it is to be supposed both that she would have her deed indicate this unmistakably, and also that she would concern herself about the matter of taxes on the part she retained, and would take steps to have that part set off from the part she conveyed, and separately assessed. The fact that she did not attempt to have this done or concern herself with the matter of taxes, if it be really the fact, would seem to indicate that by her conveyance she intended to part, and believed she had parted, with all she had. Outside of this evidence, there is practically nothing of any significance. [8] Martin herself testified that she did not intend to convey the land in the streets, but her intention in this respect is to be ascertained by what she said in the deed as construed in the light of the circumstances under which it was made and her conduct with reference to it, and not by extrinsic testimony as to what she intended. Her testimony was wholly

incompetent, and even though admitted without objection, entitled to almost no weight. It is wholly insufficient to control and overcome the rule of construction we have been discussing. [9] It is also to be borne in mind that in case of doubt a deed is to be construed in favor of the grantee, except as to reservations or other provisions which it may contain for the benefit of the grantor. (Code Civ. Proc., sec. 1864.) The rule of construction, then, which we have been discussing governs the case upon the circumstances shown and the evidence appearing, so that under those circumstances and upon that evidence the deed by Martin to Lempertz operated to convey to the latter as a part of the lot specified in the deed the land in controversy.

The two judgments appealed from are reversed.

Shaw, J., Lennon, J., Lawlor, J., Angellotti, C. J., and Wilbur, J., concurred.

SLOANE, J., Dissenting.—I dissent from the majority opinion that land which was formerly, but is no longer, a street or highway passes as of course from the grantor to the grantee by a deed to land bordering on said vacated street or highway.

The common-law rule governing the presumption in relation to conveyance of land bordering on a highway or stream has been formulated in our codes, as follows:

Civil Code, section 1112: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."

Section 2077, subdivision 4, Code of Civil Procedure: "When a road, or stream of water not navigable, is the boundary, the rights of the grantor to the middle of the road or thread of the stream are included in the conveyance, except where the road or thread of the stream is held under another title."

The obvious limitation to this rule is that in order for it to become operative there must be an existing highway or stream at the time of the transfer. How can it be logically contended that such a conveyance carries beyond the described limits where the highway no longer exists, more than in a case where it never existed?

The only theory that can uphold this rule as to vacated streets is that taken by the majority opinion that the actual boundary of a tract bordering on a highway is the center line of such highway and that the abutting land of the highway is an integral part of the lot or tract, and remains such, after the highway is vacated. This is avowedly the position taken in Justice Olney's opinion. He says: "Putting it another way, the fee in the half of the street upon which the lot abuts is in fact a part of the lot, so that a conveyance of the lot conveys the fee in the street as part of it." If this is the correct theory it would logically follow that the soil of the street would remain a part of the lot although the easement of the street was abandoned. Such a consideration might be tenable under a description which, in terms, carries the boundaries to and along a street or highway, such reference to the street or highway being read as referring to the median line. But it cannot consistently apply to the conveyance of a lot as delineated on a map. In such a description the outlines and dimensions of the tract conveyed are plainly defined and limited by scale and diagram, which show the area within the lines of the plat and without the street. To hold that a lot so described extends to the center of the street is a contradiction of terms. The *reductio ad absurdum* of such a construction is demonstrated by the department opinion of this court in the case of *Earl v. Dutour*, 181 Cal. 58, [6 A. L. R. 1163, 183 Pac. 438]. In that case the plaintiff and defendant acquired title respectively to the easterly and westerly one-half each of lot 17 of the Hillard tract as per recorded map of said tract. On the westerly border of the lot as delineated on the map is a street sixty feet in width. The plaintiff, owning the easterly half of the lot, contended, in accordance with the view of the majority of the court here, that the lot extended into the street and that his half of the lot extended from the easterly border halfway to the line marking the center of the street. As a result, if the lot as marked on the map happened to be an ordinary fifty foot town lot, but included in its legal entity thirty feet additional of street, the defendant would be left with thirty feet of street and ten feet of real available land as his westerly half of the lot.

There was some reason for plaintiff's contention in that case, since the plat by a dotted line carried the apparent

boundary of the lots to the middle of the street. Of course, the court held, as justice demanded, that in such case when the deed referred to the undivided half of a lot it meant lot and not street.

But let us consider a more extreme and not at all impossible illustration. Suppose we have a fifty foot lot abutting on the west upon a one hundred foot street. The owner conveys the west half of the lot. If the boundary of the lot is the middle of the street the grantee gets nothing but street.

It would be a queer construction that would define the two halves of a lot separately conveyed as including only the land within the prescribed boundaries of the map, but would embrace thirty or forty additional feet of street within its dimensions in the conveyance of the entire lot. It would present a condition in which the whole is greater than its parts. We must accept this incongruity as the legal effect of such a conveyance, or hold that the transfer by reference to lot numbers which carries title to the center of the adjacent street, does so by way of intendment as something appurtenant to but outside the land described, and not on the theory that the law enlarges the lot by extending its boundaries to the middle of the street.

Under the plain terms of the law, this can only result when the abutting land is at the time of the conveyance impressed with the public easement of a street or highway. It is said that the intention of the parties must prevail, and that in these conveyances the law presumes the intention of the grantor to transfer his title in the fee of the street, but that is true only when there is a street. Such is the doctrine laid down in the only decision of this court heretofore considering this question. In *Sanchez* v. *Grace M. E. Church*, 114 Cal. 295, [46 Pac. 2], it was said as to land formerly part of a highway claimed under conveyance after the public way had been vacated: "A more serious question is whether the land in Messers lane to the middle of it did not become, when the lane was vacated, by a sort of accretion, parcel of the abutting lots so as to pass with them by deed to Leonis without further designation. . . . We think no such rule can obtain in this case; the conveyance of land bounded by a highway is presumed to carry title to the median line of the way, but there is no reason in a like

presumption to include land which has formed, but no longer forms, part of a highway." While the doctrine laid down in this decision is weakened as authority by uncertainty as to who was the owner in the fee of the lane, it is at least a clear and explicit expression of the view at that time approved by the court on this point.

The above doctrine is clearly adopted by the supreme court of Minnesota. *White* v. *Jefferson,* 110 Minn. 276, [32 L. R. A. (N. S.) 778, 784, 124 N. W. 374, 125 N. W. 262], presents a case directly in point. One Allie Hewitt owned "lots 23 and 24, Hewitt's Outlots, First Division, according to the recorded plat thereof." This ownership carried title to the center of an adjacent street. This street was vacated by the city council. Thereafter the defendants acquired title under a deed containing the foregoing description. Answering defendants' claim that the vacated strip, which was still owned by the grantor at the time of the conveyance, passed with the deed to the lots, the court says: "On principle the answer is clear. In the first case, at the time of the transfer, the lots would front on a street; in the second case, they would not front on a street. A conveyance according to a plat is a conveyance by recorded metes and bounds, except where the lots front on a street." The opinion in this case contains an exhaustive examination of the principle involved and the authorities on the subject, and quotes with approval the rule stated in *Sanchez* v. *Grace M. E. Church, supra.*

Other decisions favoring the same rule are *Brown* v. *Tabor,* 103 Iowa, 1, [72 N. W. 416]; *Overland Machine Co.* v. *Alpenfels,* 30 Colo. 171, [69 Pac. 574]; *Harris* v. *Elliott,* 10 Pet. 25, [9 L. Ed. 333, see, also, Rose's U. S. Notes]; *Chicago Lumber Co.* v. *Driving Park,* 97 Iowa, 25, [65 N. W. 1017].

The presumption that a conveyance of land abutting on a public street or highway carries to the middle of the street is founded evidently on a rule of public policy which discourages the separation of the title to the soil of highways from the adjacent tracts on account of the intimate use and association of such streets to the abutting owner. For many uses the abutting soil of the streets is of value to the adjacent owner, where it would be valueless to a separate proprietor of the fee while subject to the easement of

a street. (4 R. C. L., pp. 7, 8; *Norcross* v. *Griffiths*, 65 Wis. 599, [56 Am. Rep. 642, 27 N. W. 606]; 9 Corpus Juris, p. 197, sec. 84.) None of these reasons of policy apply where the land is no longer part of a highway.

While there is an opposing line of authorities outside of California supporting the views of the majority opinion, I think the doctrine here contended for is more in harmony with reason and the fundamental rules governing title to real property.

No question is raised in the case before us as to continued rights of easement in these streets in behalf of adjacent owners, as are involved and the subject of discussion in *Danielson* v. *Sykes,* 157 Cal. 686, [28 L. R. A. (N. S.) 1024, 109 Pac. 87], and *Eltinge* v. *Santos,* 171 Cal. 278, [Ann. Cas. 1917A, 1143, 152 Pac. 915], cited in Justice Olney's opinion. Nor is there any element of estoppel, as there might be in case of a grant by reference to a map showing the lands abutting upon streets, where the grantee accepts conveyance in reliance upon such map and without knowledge that the street had been vacated. In this case the streets had been closed for upward of twelve years, the proceedings vacating them were matters of record, and there is no pretense that the grantees were not aware of the fact at the time of their purchase.