GEORGE A. HUFF *v.* HASTINGS EXPRESS COMPANY *et al.*
and
GIDEON C. BACH *v.* SAME.

| 195 | 257 |
| 199 | ¹313 |

*Opinion filed February 21, 1902.*

1. CONVEYANCES—*when rule that grant of land carries title to center of highway does not prevail.* The rule that a grant of lands bordering on a highway or river carries the exclusive right and title in the highway or river to the center thereof, subject to the right of passage in the public, is not enforced where it appears that by the grant and the attendant circumstances the intention of the grantor was to confine the grantee to the edge of such highway or river.

2. SAME—*when a railroad company does not forfeit right to land by making contract for construction of viaduct.* Where a railroad company, prior to the execution of a contract between it and the city for the construction of a viaduct over a street, owns a strip of land abutting upon such street, the fact that the contract provides that the viaduct shall cover such strip and that the company grants to the city "the right to use, repair and maintain said viaduct and its said approaches *as a public highway,*" does not amount to a dedication of such strip as a highway, so as to preclude the company from asserting its ownership thereof in case of the removal of the viaduct, where the contract expressly reserves the company's right to the strip upon such contingency.

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is a bill, filed in the superior court of Cook county on June 1, 1899, by the appellant, Gideon C. Bach, against the appellees, the Hastings Express Company and city of Chicago, alleging, in substance, that a strip of land 25 feet wide lies north of certain property owned by appellant, Bach; that a viaduct had been erected upon said strip in pursuance of the contract hereinafter mentioned, but had been removed in the spring of 1898 by the railway company or the city, or both; that said 25-foot strip is a public highway, and complainant, Bach, has the right to use the same; that appellee, the Hastings Express Company, claims to own said strip under a deed from the Chicago, Rock Island and Pacific Railway Company, and is about to erect a building thereon; and praying that the Hastings Express Company be restrained from erecting said building. On June 5, 1899, the Hastings Express Company filed an answer, setting up an ordinance and contract passed and executed on January 14, 1885, between the town of Lake of the first part, and the Chicago, Rock Island and Pacific Railway Company and the Lake Shore and Michigan Southern Railway Company of the second part, providing for the construction by the railroad companies upon said strip of a viaduct over their tracks at Sixty-first street in the town of Lake; and setting up that the contract was executed in pursuance of the ordinance passed by the town of Lake; that the viaduct was constructed in accordance with the contract; that the city of Chicago, to which the town of Lake became annexed, abandoned and removed the viaduct; that Sixty-first street was re-opened, and that whatever interest in the strip may have vested in the city or the public had reverted to the railroad companies, and that the express company derived its title from the railroad companies. The answer denies that the strip is or ever was a public highway.

On December 28, 1900, the Hastings Express Company filed a cross-bill, making defendants thereto the appellant, Gideon C. Bach, the appellee, the city of Chicago, and one George A. Huff, and the unknown owners of the property in dispute. Huff was the owner of property, which lay south of the strip in question, and he and Bach began ejectment suits after the filing of the original bill by Bach against the express company to recover possession of the strip in question lying north of their respective lots. The cross-bill alleged, that the claims of the defendants, Huff and Bach, constituted a cloud upon the title of cross-complainant, and prayed that they might be restrained from prosecuting their ejectment suits, and that the title might be established in cross-complainant, the express company. Separate answers were filed to the cross-bill by Bach and Huff. On March 23, 1901, the city of Chicago filed a disclaimer, alleging the destruction of the viaduct, and the re-attachment of the rights of the railroad companies in pursuance of article 9 of the contract, and disclaimed all manner of right and interest to the land in dispute.

After testimony taken and hearing had, the court, on June 7, 1901, rendered a decree dismissing the original bill for want of equity, and finding that the appellee, the Hastings Express Company, was entitled to affirmative relief upon its cross-bill, and decreeing that the railroad companies conveyed to the Hastings Express Company the strip in question free and clear of any and all rights attaching thereto under the contract between the town of Lake and the railroad companies, set forth in the ordinance in question passed on January 14, 1885, and further decreeing that Bach and Huff be enjoined from the prosecution of the ejectment suits, and from making any further claim to the premises, or any portion thereof, because of the said viaduct and approaches thereto and the use thereof as a public highway, and that they pay the costs.

The present appeal is prosecuted from such decree entered by the superior court of Cook county.

The facts of the case are substantially as follows: On January 14, 1885, the Chicago, Rock Island and Pacific Railway Company and the Lake Shore and Michigan Southern Railway Company owned the 25-foot strip in question. At that time Sixty-first street, which ran east and west, was 66 feet wide, and the 25-foot strip in question lay directly south of the south line of Sixty-first street, and is described as being bounded "on the south by a line drawn 91 feet south of and parallel with the north line of Sixty-first street." A plat, showing the general location and surroundings of the viaduct built over this strip, and of Sixty-first street, and of the crossing thereof by the railroad tracks, may be seen in the statement of facts, which precedes the decision in the case of *City of Chicago* v. *Burcky*, 158 Ill. 103.

On January 14, 1885, the town of Lake passed an ordinance, authorizing the contract between the town and the railroad companies, entitled "An ordinance authorizing the construction of a viaduct across the tracks of the Chicago, Rock Island and Pacific Railway Company and the Lake Shore and Michigan Southern Railway Company at Sixty-first street." By the ordinance, passed by the board of trustees of the town of Lake, the president of the board and the town clerk were authorized to execute the contract with the railroad companies on behalf of the town, and the ordinance specified what the terms of the contract should be. The contract, as embodied in the ordinance, recites that the public interests demand that a viaduct should be constructed across the tracks of said railway companies at or near Sixty-first street in the town of Lake, and that an arrangement could be concluded with the companies, by which the same could be constructed in a manner advantageous to the town. By article 1 of the contract the railway companies agree at their own expense to construct a viaduct over their

tracks at or near Sixty-first street in the town of Lake, including the approaches to the same, from a point about 170 feet east of the east line of Wentworth avenue to a point about 210 feet west of the west line of State street. Article 2 of the contract provides "that the south line of the viaduct, and the approaches to be constructed, shall be on a line drawn parallel with and 91 feet south of the north line of Sixty-first street." Article 3 of the contract is as follows: "When the viaduct and all the approaches thereto are finally constructed, the said railway companies hereby grant to the said town of Lake the right to use, repair and maintain said viaduct and its said approaches as a public highway: *Provided, however*, that this grant shall not be construed as to grant or reserve to the said town any right to or interest in the land lying or being between the east line of LaSalle street and the east line of Butterfield street continued, said east line of Butterfield street being a line 541 feet west of the center line of State street, which is reserved to the parties of the second part, except so far as may be reasonably necessary to enable the said town of Lake to properly maintain, repair and continue said viaduct and its approaches." Article 4 provides for the cessation of the control of the railway companies upon the completion of the viaduct. By article 5 the town of Lake agrees to construct the approaches from the street lines of State street and Wentworth avenue, respectively. By article 6 it is provided that the town of Lake shall have and take, from and after the completion of the viaduct and its approaches by the parties of the second part, "full and exclusive control thereof, and shall forever, at its own expense, maintain and repair the same, and re-place the same if necessary: *Provided*, that no material change shall ever be made in the plan thereof, without first obtaining the written consent of the said railway companies thereto." By article 7 the town agrees to vacate by proper ordinance that portion of Sixty-first street, which lies between a line

drawn at right angles to the line of Sixty-first street and 139 feet east of the east line of LaSalle street and a line drawn parallel with such a line 198 feet easterly therefrom, etc., provided that the town shall have the right, at its own expense, to construct and lay down a sewer, water and gas pipe within the portion of Sixty-first street agreed to be vacated. The portion of Sixty-first street, thus agreed to be vacated, is a portion 198 feet long, which is agreed to be the portion of the street that is crossed by the right of way of the railway companies. By article 8 the town agrees to pay damages resulting to anybody from the construction and continuance of the viaduct. Article 9 is as follows: "It has been the intention of the parties hereto to remove the cause of danger to the public, and inconvenience of both the parties of the first and second parts, attendant upon the use by the public of Sixty-first street at the point to be vacated, and it is hereby understood and agreed that, in case that portion of Sixty-first street is not vacated, or in case said town of Lake, or any municipality succeeding to its powers, shall ever cause Sixty-first street to be re-opened after such vacation, in addition to such damages as the parties of the second part, or either of them, may be entitled to because thereof, it being understood that the cost of the viaduct shall be included therein, the right of the public to use the viaduct and its approaches, and that portion of the land necessary for the maintenance and continuance thereof, and all rights hereby granted, shall immediately cease and determine, and the same revert to said railway companies and their successors, free and clear of any and all rights attaching thereto to the party of the first part." Article 10 reserves certain rights necessary for the convenient operation of the railroads. By article 11 the railway companies agree to open LaSalle street from Sixty-first street to Sixty-second street, or to quit-claim to the town of Lake the necessary land for opening the same. By article 12 it is stated that the

land, upon which the said viaduct and its approaches are to be constructed, is located in the town of Lake.

The viaduct was built about November, 1885. By ordinance of December 30, 1885, the town of Lake vacated the portion of Sixty-first street occupied by the railroad tracks, such portion being 198 feet long, as above stated. It is conceded, that the town of Lake subsequently became annexed to the city of Chicago, and that upon annexation the control of the viaduct passed to the city.

On May 17, 1886, the Chicago, Rock Island and Pacific Railway Company by deed of that date, recorded on May 21, 1886, conveyed to Benjamin F. Jacobs certain real estate described as "all that part of lots 12, 13 and 14 of the school trustees' subdivision of section 16, township 38 north, range 14 east of the third principal meridian, bounded as follows: On the north by a line drawn 91 feet south of and parallel with the north line of Sixty-first street, in the town of Lake; on the east by the west line of LaSalle street extended; on the south by the property conveyed to the Pittsburg, Ft. Wayne and Chicago Railway Company and Lake Shore and Michigan Southern Railway Company and the Chicago, Rock Island and Pacific Railway Company by deed dated April 13, 1885, and recorded in book 1615 of records, on page 400; and on the west by said property so conveyed to the Pittsburg, Ft. Wayne and Chicago Railway Company and by the east line of Wentworth avenue, excepting and reserving therefrom so much of the above described premises as is now used and occupied by the town of Lake as and for Sixty-second street."

In May or June, 1886, B. F. Jacobs made a subdivision entitled "B. F. Jacobs' subdivision of that portion of lots 12, 13 and 14 in school trustees' subdivision of section 16," (as above), "bounded on the north by a line 91 feet south of and parallel with the north line of Sixty-first street; east by the east line of LaSalle street continued; south by the land conveyed to the Pittsburg, Ft. Wayne and

Chicago Railway Company by deed dated April 13, 1885; * * * and on the west by the property in said deed conveyed and by the east line of Wentworth avenue."

The following is a plat of Jacobs' subdivision:

On April 28, 1888, Jacobs and wife conveyed to George W. Robinson and George A. Huff "lots 1 and 2 in block 1 in B. F. Jacobs' subdivision of that portion of lots 12, 13 and 14 in school trustees' subdivision of section 16, township 38 north, range 14 east of the third principal meridian, bounded on the north by a line 91 feet south of and parallel with the north line of Sixty-first street; east

by the east line of LaSalle street continued; south by the land conveyed to the Pittsburg, Fort Wayne and Chicago Railway Company by deed dated April 13, 1885,  *  *  * and on the west by property in said deed conveyed, and by the east line of Wentworth avenue, according to the plat of said subdivision." On October 1, 1888, George W. Robinson and wife conveyed to Huff the undivided one-half of said lots 1 and 2 in said block 1, as above described.

By deed dated November 25, 1889, Benjamin F. Jacobs and wife conveyed to Gideon C. Bach "the north 48 feet of lot 26 in block 1 in B. F. Jacobs' subdivision of a portion of lots 12, 13 and 14, in school trustees' subdivision," etc., as above described. The plat of Jacobs' subdivision shows, that Huff owns lot 1 and Bach the north 48 feet of lot 26, all in block 1, and that the 25-foot strip lies directly north of the property so owned by them.

On July 9, 1894, the city of Chicago passed an ordinance, requiring, among other things, the railroad companies to elevate their tracks and to construct a sub-way under their tracks where their right of way intersects and crosses Sixty-first street, and ordering the commissioner of public works to remove any bridge, viaduct or approach found by him to interfere with the elevation of the tracks. In 1898 the railroad companies accepted the ordinance, and the viaduct was abandoned and taken down.

By quit-claim deed, dated April 10, 1899, the Chicago, Rock Island and Pacific Railway Company and the Lake Shore and Michigan Southern Railway Company conveyed to the appellee, the Hastings Express Company, "all that part of lot 12 in the school trustees' subdivision of section 16, township 38 north, range 14 east of the third principal meridian, bounded as follows: on the north by the south line of Sixty-first street in the town of Lake; on the east by the west line of LaSalle street; on the south by a line drawn 91 feet south of and parallel with

the north line of Sixty-first street, and on the west by the east line of Wentworth avenue."

DENEEN & HAMILL, for appellants.

EDWARD J. HILL, for appellee the Hastings Express Company.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question in this case relates to the title of the strip 25 feet wide, which lies north of the respective properties of the appellants, Huff and Bach. Both parties claim under the railroad companies as a common source of title. As we understand the record, Sixty-first street running east and west between LaSalle street on the east and Wentworth avenue on the west, and, indeed, between State street on the east and Wentworth avenue on the west, was only 66 feet wide, as originally laid out and dedicated. The strip of land here in controversy, 25 feet wide, lies south of Sixty-first street, and was no part of the original street, but was entirely outside of that street. It is not denied that in January, 1885, when the town of Lake passed the ordinance for the construction of the viaduct, and when the contract was made for the construction of the viaduct, the railroad companies owned this strip.

The theory of the appellants is, that the action of the railway companies in constructing the viaduct over the strip, and permitting its use under the grant contained in the contract, constituted a dedication as a highway of the 25-foot strip of land, occupied by the viaduct. It seems to be contended that there was a dedication of the 25-foot strip for the purposes of a highway, and that, when the viaduct built over the strip was abandoned, the reversionary interest of the dedicators passed to the appellants, as grantees from the dedicators, through Jacobs, of the abutting property.

It is conceded by the appellants that the deeds, under which they hold, did not, by their terms, convey to them, or their grantor, the strip in question. For example, the deed executed by the Chicago, Rock Island and Pacific Railway Company to Benjamin F. Jacobs conveys property bounded as follows: "On the north by a line drawn 91 feet south of and parallel with the north line of Sixty-first street in the town of Lake." The north line of the property conveyed to Jacobs was 91 feet south of the north line of Sixty-first street, and, as Sixty-first street was only 66 feet wide, there was excluded from the deed to Jacobs a strip, 25 feet wide, between the south line of Sixty-first street and the north line of the property conveyed to Jacobs. Therefore, the deed from the railway company to Jacobs conveyed to him no part of the 25-foot strip in question, but, by the express boundaries named in his deed, that strip was excluded from the land conveyed to him. So, also, the deed, executed by Jacobs to Huff and Robinson, conveyed lots "bounded on the north by a line 91 feet south of and parallel with the north line of Sixty-first street." By this description there was expressly excluded from the land conveyed to Huff and Robinson, (Robinson's interest afterwards being conveyed to Huff), the portion of the 25-foot strip, which lies north of Huff's land and between its north line and the south line of Sixty-first street. The deed from Jacobs to Bach conveys "the north 48 feet of lot 26 in block 1 in B. F. Jacobs' subdivision," etc., but conveys nothing else except such north 48 feet. By its terms it includes no part of the strip lying north of such 48 feet.

While, however, counsel for appellants concede that the strip in question did not pass by virtue of the deed to Jacobs, if that deed is to be taken literally, yet they rely upon the presumption that the conveyance of land, abutting upon a street, will be presumed to include the land to the middle of the street. This contention assumes that the land of appellants abuts upon a street. It does

not, however, abut upon Sixty-first street, but it abuts upon a strip of ground 25 feet wide lying south of Sixty-first street. It is claimed that, by virtue of the construction of the viaduct over this strip, it became a part of Sixty-first street, so as to widen that street to a width of 91 feet, instead of 66 feet, as its width was theretofore. Article 3, it is true, provides that "when the viaduct and all the approaches thereto are finally constructed, the said railway companies hereby grant to the said town of Lake the right to use, repair and maintain said viaduct and its said approaches as a public highway." It was the viaduct, which was to be used by the town as a public highway, and not necessarily the ground under the viaduct. The viaduct was an elevated structure for the purpose of carrying the travel, by persons and teams, over the railroad tracks, which crossed Sixty-first street. Let it be admitted, however, that the strip in question, by virtue of the viaduct constructed over it, was a highway. If the presumption, that the conveyance of land abutting on a street includes the land to the middle of the street, is to prevail in this case as to the 25-foot strip in question, the appellants, in any event, would only be entitled to the half of the strip lying north of their lots, and the other half would belong to the city of Chicago as being the owner of Sixty-first street, 66 feet wide, lying north of the strip. Under this view the contention of appellants, that they are owners of the whole of the strip, can not prevail in any event.

The rule, that a grant of lands, bordering on a highway or river, carries the exclusive right and title in the highway or river to the center thereof subject to the right of passage in the public, is not enforced where it appears that, by the terms of the grant and all the attendant circumstances, the intention of the grantor was to confine the grantee to the edge or margin of the highway or river. (*City of Chicago* v. *Laflin*, 49 Ill. 172, and cases there referred to; *Piper* v. *Connelly*, 108 id. 646; *Rock-*

*well* v. *Baldwin*, 53 id. 19; *Davenport Bridge Railway Co.* v. *Johnson*, 188 id. 472; *Helmer* v. *Castle*, 109 id. 664).

In *Henderson* v. *Halterman*, 146 Ill. 555, we said (p. 564): "The presumption, that the owner of the adjoining land intended to convey his interest in the highway, may be overcome, either by the use of express terms excluding it, or by such facts and circumstances as show an intention to exclude it. The intent to exclude the highway must appear from the language of the deed, as explained by surrounding circumstances." The doctrine on this subject is well stated by Elliott in his work on Roads and Streets, (2d ed. sec. 723,) in the following words: "This presumption, that the adjoining owner intended to convey his interest in the highway, is not conclusive. It is a rebuttable presumption. He may convey either separately—the soil under the highway without the adjoining land, or the adjoining land without the soil under the highway—and if he uses express terms excluding the highway, or if the facts and circumstances are such as to clearly show that he intended that no interest in the fee of the highway should pass, such presumption is overcome, and the grantee will take only to the side of the highway. The question is one of intention to be ascertained from the language of the deed, together with other facts and circumstances properly going to explain that language, such as the situation of the lands and the relation of the parties, the presumption of intent to pass the title to the center of the road prevailing unless a contrary intention appears."

In the case at bar, the intention not to convey the strip in question, but to convey only such land as lay south of the strip in question, is not only apparent from the clear and definite language of the deeds, as recited hereinbefore and in the statement preceding this opinion, but also from the terms of the original contract made between the town of Lake and the railroad companies, and the conduct of the parties to that contract since

its execution. When the appellants purchased their lots from Jacobs, they must be presumed to have had notice or knowledge of the terms of the contract between the town of Lake and the railroad companies, under which the viaduct was constructed. Article 9 of that contract provided that, "in case said town of Lake, or any municipality succeeding to its powers, shall ever cause Sixty-first street to be re-opened after such vacation, * * * the right of the public to use the viaduct and its approaches, and that portion of the land necessary for the maintenance and continuance thereof, and all rights hereby granted, shall immediately cease and determine and the same revert to said railway companies and their successors, free and clear of any and all rights attaching thereto to the party of the first part." After the town of Lake was annexed to the city of Chicago, the city of Chicago passed an ordinance requiring the railroad companies to elevate their tracks, and caused the viaduct to be removed and destroyed. As a necessary result of the elevation of the tracks over Sixty-first street, Sixty-first street, at the point where it had been vacated in accordance with the contract, was re-opened to the use of the public. It is true, that the surface of the street was sunk in such a way as to constitute what is called a subway under the tracks, but the street was none the less re-opened even if a part of it was changed in such a way as to constitute a subway. The contingency provided for in article 9 has, therefore, occurred. The city of Chicago, a municipality succeeding to the powers of the town of Lake, has caused Sixty-first street to be re-opened since its vacation in December, 1885, and, therefore, the right of the public to use the viaduct has determined and has reverted to the railway companies and their successors. After such reversion took place, the railway companies conveyed the strip to the appellee, the Hastings Express Company. We are unable to see why that deed did not convey to the express company a

good title.   Counsel for appellants seem to claim that the word, "successors," in article 9 refers to and includes Jacobs, as a grantee of the railroad company.   They, therefore argue, that, when the reversion took place, it vested the title to the strip in Jacobs as a grantee of the railroad company, and in themselves as grantees of Jacobs.   The trouble with this contention is, that the deed to Jacobs did not convey any part of the strip in question, but only certain land lying south of the strip. In addition to this, we do not understand that the word, "successors," here refers to grantees, but to such railroad companies as might be successors to the railroad companies, who made the contract with the town of Lake, the word "successors" referring to succession in their capacity as railroads.

In view of what is said, we are of the opinion that the appellants took no interest in the strip in question, and that the decree of the court below, dismissing the original bill, and granting the relief prayed for by the cross-bill, was correct.

Accordingly, the decree of the superior court of Cook county is affirmed.                    *Decree affirmed.*