373 P.2d 9

Lyle B. TORREY and Grace M. Torrey, husband and wife; and Lloyd D. Hunter and Thelma C. Hunter, husband and wife, Appellants,

v.

Harold W. PEARCE and Dorothea C. Pearce, husband and wife; John Doe I and II; Mary Doe I and II; Doe Corporation I and II, Appellees.

No. 6905.

Supreme Court of Arizona,

En Banc.

June 28, 1962.

Cunningham, Carson & Messinger, Phoenix, for appellants.

Snell & Wilmer, Phoenix, for appellees.

BERNSTEIN, Chief Justice.

The appellants, who were the plaintiffs below, filed a quiet title action in the Superior Court. Both sides agreed that the matter was one of law and both sides moved for summary judgment. The trial court ruled in favor of the defendants and this appeal followed.

The various land areas will be referred to as noted on the attached partial tracing of the subdivision of the land involved. This tracing was made for the court from a large copy of the official map of Why Worry Farms Amended. A copy of the plat was included in the record on appeal. Portions of the material appearing on the official plat have been eliminated and other matters have been added.[1]

The court will use the last names of the persons and a singular name includes husband and wife. We will omit recitation as

1. The designations "North Alley" and "East Alley" have been inserted by the court. The 9-foot offset between the extended common boundary line between Parcels 15 and 16 on the one hand and the extended common boundary line between Lots 1 and 2 on the other has been inserted. The designations "Goodnight— Parcel 16" and "Pearce—Parcel 15" have been inserted by the court. The distance underneath the name "Goodnight," that is to say, the distance of 354 feet, has been inserted, as has the distance from the west line of Lot 2 to the east line of the land included within the plat of the subdivision. The northerly boundary of Why Worry Farms Amended extends easterly from the northwest corner of the southeast quarter of the northeast quarter of Section 31, Township 3 North, Range 3 East, and all matters northerly therefrom have been inserted by the court as being matters which are not contained in the subdivision tract as recorded. The north-south line at the easterly extremity of Parcel 15 is not placed with accuracy as that boundary line was not disclosed in the record.

NW. CORNER OF THE SE ¼ NE ¼ OF SECTION 31, T.3N., R.3E. Fd. I.P.

32'  30'

11TH ———  18'  AVE.

20'  5'

LOT 3

172.5'

NORTH ALLEY

GOODNIGHT - PARCEL 16

354'

HUNTER

LOT 2

172.5'

378'

9' TRACT "A"

PEARCE - PARCEL 15

TORREY

LOT. 1

185.5'

20'

20'

EAST ALLEY  5'

W

S  N

E

to mesne conveyances where the same do not affect the legal problems involved.

The following is the important chronology:

Prior to November 9, 1948, Goodnight owned Parcels 15 and 16 as well as the land adjacent thereto and immediately to the south thereof, which later became Why Worry Farms Amended, the whole thereof being one contiguous piece of land.

On November 9, 1948, the map or plat of Why Worry Farms Amended was filed in the office of the County Recorder of Maricopa County. The subdivision included nine lots. The entire northerly 5 feet of the subdivision, which is adjacent to the south boundary of Parcels 15 and 16, was designated as Tract A. There was an unnamed 20-foot strip along the north side of the subdivision adjacent to and southerly from Tract A, which the court herein arbitrarily calls the North Alley. This 20-foot strip continued down the east side of the subdivision, which the court arbitrarily calls the East Alley, and at the southerly extremity of the subdivision the 20-foot strip turns westerly to 11th Avenue. In the interior of the subdivision there is a 45-foot U-shaped area bearing the name of Why Worry Lane which touches upon all of the lots and gives access to all of the lots. The subdivision plat contains the following "dedication."

"And hereby declare that the accompanying plat sets forth the location and gives the dimensions of the lots, streets and alleys * * * and that the streets and alleys shown thereon are hereby dedicated to the public for its use and benefit. The easements shown thereon are for the use of irrigation ditch or pipe."

By a warranty deed recorded on March 23, 1949, Goodnight conveyed Lots 1 and 2 to Converse. These were described by the reference to the numbered lots in the recorded plat. The deed recited that the conveyance was "subject to" certain matters of record expressly recited therein.

By a warranty deed recorded on March 20, 1952, Goodnight conveyed Parcel 15 to Converse, and in addition thereto the east 378 feet of Tract A. Tract "A" was subject to easements as recited in the dedication which is a part of the subdivision plat. 378 feet is the total lineal distance of the combined north lines of Lots 1 and 2, plus the 20-foot width of the alley east therefrom between the east line of Lot 1 and the east line of the subdivision.

On the 25th day of August, 1952, the Board of Supervisors vacated the entire alley, that is, the 20-foot strip on the north, on the east and on the south of and included within the Why Worry Farms Amended subdivision. As of the moment of this action by the Board of Supervisors Goodnight owned Parcel 16 and Converse owned Parcel 15, together with the east 378 feet of Tract A, together with Lots 1 and 2. All parties agree that after vacation and aban-

donment of the north alley by the Board of Supervisors, Converse owned the unencumbered fee in the east 378 feet thereof. This is the area presently in dispute.

By deed recorded on February 18, 1955, Converse conveyed Lot 1 (and a portion of Lot 2 which is not material to this litigation), making reference to the lot by the book and page of the recording of the map or plat of the subdivision. This deed carried the same "subject to" provisions which were included in the Goodnight deed to Converse in relation to Lots 1 and 2 in March of 1949. This deed contained no reference to the vacating of the alley by the Board of Supervisors. Title eventually became vested in Torrey by a series of deeds not varying in essential terms.

By deed recorded on August 31, 1955, Converse conveyed the balance of Lot 2, making reference to the book and page of the recording of the map. In this deed, however, we find not only the recitations contained in the Torrey deed but in addition thereto we find the following: "Subject to * * * the effect of the abandonment of the 20-foot easement for roadway bordering the north side of Lot 2, as shown by Resolution, * * *. Title eventually vested in the plaintiff Hunter.

By deed recorded on September 17, 1957, Converse conveyed to Pearce, this deed containing three separate property descriptions, being, first, the land called Parcel 15; second, the east 378 feet of Tract A; and, third, the east 378 feet of the north alley (the disputed area).

Hunter and Torrey claim ownership of that portion of the north alley adjacent to and northerly from their north lot lines. Their theory is that the deeds of Converse conveying "Lot 1, Why Worry Farms" and "Lot 2, Why Worry Farms" conveyed the abandoned alley as a matter of law, and that the deed to Pearce, although it described the disputed area, did not convey it because Converse then had nothing left to convey. Hunter and Torrey filed their suit to quiet title against Pearce and Pearce claims the same land.

■■ It is an almost universal rule that if land abutting on a public way is conveyed by a description covering only the lot itself, nevertheless, the grantee takes title to the center line of the public way if the grantor owned the underlying fee, unless the contrary intention sufficiently appears from the granting instrument itself, or the circumstances surrounding the conveyance.[2] The rule is one of construction, and applies in the absence at the time of the grant of any indication as to the grantor's intent in dealing with his interest in the public way, Crocker v. Cotting, 166 Mass. 183, 44 N.E.

2. See, e. g. In re Parkway in the City of New York, 209 N.Y. 344, 103 N.E. 508, 2 A.L.R. 1 (1913) and the cases collected in annotations at 2 A.L.R. 6 and 49 A.L.R.2d 982.

214, 33 L.R.A. 245 (1896); Hobson v. City of Philadelphia, 150 Pa. 595, 24 A. 1048 (1892); Huff v. Hastings Express Co., 195 Ill. 257, 63 N.E. 105 (1902). Cf. Overland Mach. Co. v. Alpenfels, 30 Colo. 163, 69 P. 574 (1902). In the circumstances where the grantor conveys a parcel abutting a marginal roadway, if the grantor owns the underlying fee in the full width of the road, but owns no interest in the lands abutting the road on the side opposite the land conveyed, the rule gives to the grantee the grantor's interest in the full width of the roadway, Lamprey v. American Hoist & Derrick Co., 197 Minn. 112, 265 N.W. 434 (1936); Haines v. McLean, 154 Tex. 272, 276 S.W.2d 777 (1955); Rowe v. James, 71 Wash. 267, 128 P. 539 (1912).

In its rationale, the rule recognizes that grantors tend to think of their holdings in terms of the areas within their lot lines, and to overlook any fee interest they might have in abutting roads or alleys. The sound presumption is that if the grantor had been cognizant of his interest in the abutting public ways, he would have included it in his conveyance to the grantee, rather than retain an interest in a strip or gore of land of no utility to himself, Mott v. Mott, 68 N.Y. 246 (1877); Henderson v. Hatterman, 146 Ill. 555, 34 N.E. 1041 (1893).

The question now before this court is whether this same presumption or rule of construction should apply when a grantor conveys land described by lot number where that land abuts on a *vacated* alleyway. The question is not novel,[3] although it is one of first impression before this court.

Representative of the early opinions considering this issue is White v. Jefferson, 110 Minn. 276, 124 N.W. 373, 125 N.W. 262, 32 L.R.A.,N.S., 778, 784 (1910), where the facts were essentially similar to the case now before us. There the court said:

"On vacation of a street in a case like the one at bar, [the owner of adjacent lots] owns lots 23 and 24 and the space between in fee simple. He can transfer the whole tract, or any part of it, or transfer lot 23 to any person, and lot 24 to another person, and the space between the two to a third person. * * * The land which had been a street assumed exactly the same legal status as any other land which had not been impressed with a public easement. There is neither mystery nor magic in the word 'street.' The easement of use is the significant fact. When the easement ceases, there is no occasion nor justification for any imputation of intention. * * *" 110 Minn. at 284, 124 N.W. at 375.

3. Cases which discuss this issue are collected in annotations at 32 L.R.A.,N.S., 778, 2 A.L.R. 33 and 49 A.L.R.2d 1002.

**18**

The same line of reasoning was adopted in Sanchez v. Grace M. E. Church, 114 Cal. 295, 46 P. 2 (1896); Brown v. Taber, 103 Iowa 1, 72 N.W. 416 (1897); and a series of Washington cases including Hagen v. Bolcom Mills, Inc., 74 Wash. 462, 133 P. 1000, 134 P. 1051 (1913) and Turner v. Davisson, 47 Wash.2d 375, 287 P.2d 726 (1955).

The later cases in several jurisdictions have taken a different view. In Anderson v. Citizens' Savings & Trust Co., 185 Cal. 386, 197 P. 113 (1921), the court cited the rule that where land is conveyed by a description which bounds it by a street, and the grantor is the owner of the fee in the street, the real boundary line of the property is not the side line of the street but the center line and then stated:

"* * * [I]t would seem that it should make no difference that there is in fact no public street there, provided the conveyance be one which describes the lot as bounded by a street. By such a description a street is created as between the grantor and the grantee, regardless of whether or not there is an existing dedication as between the grantor and the public." 185 Cal. at 393. 197 P. at 117.

See also Greenberg v. L. I. Snodgrass Co., 161 Ohio St. 351, 119 N.E.2d 292, 49 A.L.R. 2d 974 (1954); Askins v. British-American Oil Producing Co., 201 Okl. 209, 203 P.2d 877 (1949); and Rothwell v. Veail, 129 Kan. 679, 284 P. 359 (1930) which reach the same result.

We are not persuaded by the reasoning of the cases last cited. In this state, where land speculation has been nourished by a high rate of population growth, platted residential and commercial tracts exist in many undeveloped areas. When the expectations of the developers of these tracts fail to reach fruition, dedicated public ways may be vacated and the land put to a different use. While it is quite reasonable to presume that the parties to a conveyance of a lot abutting on a public way intended to include in the conveyance the grantor's rights in the abutting street or alley where the way is in existence, or is shortly to be constructed, it is not reasonable, in our view, to impute such intent when the character of the land as a street or alley no longer exists and the original plan of development has been abandoned. To hold that a grantor who conveys by lot number does so at the peril of conveying half of the adjacent area which was once platted as a street (Cf. Greenberg v. L. I. Snodgrass, supra) would impose an intolerable burden, and work to unsettle and confuse property titles. Cf. Morrissey v. Achziger, Colo., 364 P.2d 187 (1961).

■ We therefore hold that Hunter and Torrey did not acquire any rights in the north alley by virtue of the Converse deeds describing their property as "lot 1" and "lot 2", and that the deed from Converse

to Pearce, which specifically described the area in dispute, was effective to pass to Pearce the fee interest in this area which Converse acquired upon vacation of the alley by the Board of Supervisors.[4]

The judgment of the trial court is affirmed.

UDALL, V. C. J., and STRUCKMEYER, and JENNINGS, JJ., concurring.

Justice LORNA E. LOCKWOOD, having disqualified herself, the Honorable HENRY S. STEVENS, Judge of the Superior Court of Maricopa County, Arizona, was called to sit in her stead and participate in the determination of this appeal.

STEVENS, Superior Court Judge (concurring).

It is my opinion that this record presents factual matters which are so clear that the court need not engage in a discussion of legal presumptions and rules of construction on abandonment. In my opinion it is clear that Converse did not intend to convey any part of the north alley to Torrey or to Hunter, and that in addition Converse did intend to deed and did effectively deed the same to Pearce. It is my opinion

that this cause can be decided by following the following principles. In the Ohio Court of Appeals, case of Krzewinski v. Eaton Homes, Inc., 108 Ohio App. 175, 161 N.E. 2d 88 (1958) at page 90 of the opinion I find the following:

"The general rule, with respect to the sale of property by lot from a recorded plat, is stated in III American Law of Property, Section 12.103 (p. 406) to be as follows:

" 'When land is conveyed as a unit, or as a part of a unit, of a recorded plat, the plat becomes as much a part of the description as would be the case if copied into the instrument or if the data furnished by it was set out in full.' "

The Supreme Court of Iowa in the case of Snieders v. Brantsen, 245 Iowa 81, 60 N.W.2d 779 (1953), at page 781 quotes earlier authority as follows:

" * * * [I]t is said to be 'a well-settled principle that when lands are granted according to the official plat * * * the plat itself * * * becomes a part of the grant or deed by which they are conveyed, and controls, so far as limits are concerned * *.' "

4. It is not necessary for our purposes to decide whether Converse acquired the unencumbered fee in the north alley by operation of the common-law presumptions discussed above, or by virtue of A.R.S. § 18–211 which states:

"When a street, avenue, alley or county highway is vacated and abandoned, title to the land within the boundaries of the vacated street, avenue, alley or county highway shall revert to the owner or owners of the tract or tracts of land from which it was originally dedicated and shall vest severally in the owners of the abutting property."

These principles are consistent with the opinion in the case of McNeil v. Attaway, 87 Ariz. 103, 348 P.2d 301 (1960).

The plaintiffs Torrey and Hunter must stand on the strength of their title and not on the weakness of the Pearce title. Berger v. Bhend, 79 Ariz. 173, 285 P.2d 751 (1955). In this case the strength is with Pearce and the weakness is with Torrey and Hunter.

I concur in the result.