901 P.2d 1151

COTTONWOOD/VERDE VALLEY CHAMBER OF COMMERCE, INC., an Arizona nonprofit corporation, Defendant–Counterclaimant–Appellant,

KV Cottonwood Limited Partnership, a Nebraska Limited Partnership; KV International, Inc., a Nebraska corporation, Defendants–Appellants,

v.

COTTONWOOD PROFESSIONAL PLAZA I, a California limited partnership, Plaintiff–Counterdefendant–Appellee.

No. 1 CA–CV 92–0177.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 13, 1994.

As Amended Oct. 5, 1994.

Reconsideration Denied Nov. 9, 1994.

Review and Cross–Petition for Review Denied Sept. 12, 1995.

Jones, Skelton, Hochuli by David C. Lewis and Mark D. Zukowski, Phoenix, and L. Richard Mabery, P.C. by L. Richard Mabery, Prescott, for Cottonwood/Verde Valley Chamber of Commerce, Inc., defendant-counterclaimant-appellant.

Law Offices of H. Rudy C. Stadelman by H. Rudy C. Stadelman, Cottonwood, for appellant KV Cottonwood Ltd. Partnership and KV Intern., Inc., defendants-appellants.

Favour, Moore, Wilhelmsen, Payette & Schuyler, P.A. by John M. Favour and Lance

B. Payette, Prescott, for Cottonwood Professional Plaza I, plaintiff-counterdefendant-appellee.

OPINION

GRANT, Judge.

Appellants, Cottonwood/Verde Valley Chamber of Commerce, Inc. ("the Chamber") and KV Cottonwood Limited Partnership and KV International, Inc. ("KV/KVI"), appeal from a judgment for the plaintiff, Cottonwood Professional Plaza I, in a quiet title action. Plaintiff was adjudged owner of the property described in Exhibits 128 and 129 and title was quieted in plaintiff. We must first determine who holds the underlying fee interest in land subject to an Arizona Department of Transportation ("ADOT") right-of-way easement. Then we must address the validity and effect of two ADOT resolutions vacating the right-of-way easement.

## I. FACTS AND PROCEDURAL HISTORY

The property which is the subject of this quiet title action is a parcel of land located in Section 2 T15NR3E, G & SRB & M, Yavapai County. The property is in the City of Cottonwood. The only interest that the state has in the property is an easement and therefore the state does not question ownership of the underlying fee. Before 1957, Frank and Lucia Snider owned a tract of land in the City of Cottonwood with U.S. Highway 89A running along the northern border of the property and a $\frac{1}{16}$ line[1] comprising the southern boundary.[2] In 1957, the Sniders conveyed the tract to Phoenix Title as trustee of trust 2231. Trust 2231 was a subdivision trust, and the Sniders were beneficiaries.

In 1961, Phoenix Title (which later became Transamerica Title) granted a right-of-way easement to ADOT for highway 279 (now 260). This grant will be referred to as the "279 right-of-way." The Y shaped 279 right-of-way was capped off on the north by high-way 89A. The 279 right-of-way bisected the trust property, leaving land on both sides of it. The Sniders believed that they sold the land with the right-of-way to the state, until 1979 when the Chamber advised them that they might own the land.

The configuration of this easement can best be illustrated by describing the intersection of highway 89A and 279. See Appendix A. Though very little appears to be laid out on true north or at right angles, for the purpose of this opinion we will consider 89A to be an east-west route and 279 to be a north-south route. Highway 279 tees into highway 89A from the south with the exception of a "slip ramp" constructed for eastbound 89A to southbound 279 traffic. This slip ramp is an exit ramp configured such that eastbound traffic on 89A can gradually exit right and transition on to southbound 279. The southern end of the slip ramp extended beyond the southern border of the Sniders' land before eventually joining with southbound highway 279. This combination of a T–intersection and the slip ramp left about 1.7 acres of unused but usable right-of-way land in the triangular-shaped area between the slip ramp on the west and the T-intersection on the east.

In 1969, trust 2231 sold the parcel of land abutting the eastern edge of the 279 right-of-way. In 1972, the remaining land including the land abutting the western edge of the 279 right-of-way was transferred to trust 17,273. Trust 2231 was then closed. Later in 1972, trust 17,273 conveyed, by special warranty deed, the land abutting the western edge of the 279 right-of-way to the Oestmanns and the Thomases jointly. This Oestmann/Thomas land was a curved parcel of land with the slip ramp and highway 89A running along the northeastern edge. Via several other transfers, this parcel was divided with Oestmann obtaining the northern portion abutting highway 89A and the north end of the slip ramp. The southern portion, with only the slip ramp abutting the northeastern edge, was transferred to plaintiff in 1981.

---

1. The $\frac{1}{16}$ line divided the NE 1/4 SW 1/4 Section 2 from the SE 1/4 SW 1/4 of Section 2, T15N, R3E, G & SRB & M.

2. The Sniders also owned other lands located to the north of U.S. Highway 89A which are not material to this suit.

The legal description of plaintiff's property, through all of these transfers, was recorded as a metes and bounds description to a point along the highway right-of-way and then along the highway right-of-way.[3] When plaintiff purchased the property, the property was improved with an existing office building.

In 1979, Continental Service Corporation, as a successor/trustee under trust 2231, quitclaimed to the Sniders the fee title of the land contained underneath the easement for the 279 right-of-way previously granted to the state. The quitclaim deed recited: "The above-described property inadvertently was left in the above trust 2231, which closed in 1972, therefore it is exempt under A.R.S. § 33–401."

In 1980, the state through ADOT granted the Chamber a perpetual easement to construct and maintain a movable building, parking, rest stop, and park on the 1.7 acre triangular portion of land between the slip ramp and the T-intersection. The easement specified several conditions including consent by the owners of the underlying land. The Chamber obtained the consent of the Sniders and Jennings, who owned the land south of the $\frac{1}{16}$ line.

In 1988, KV/KVI acquired the Jennings' property immediately south of the $\frac{1}{16}$ line and abutting the southern part of the slip ramp and continuing south of the slip ramp along the main part of highway 279. Under permit from ADOT, KV/KVI reconstructed the 89A/279 intersection by demolishing the slip ramp and adding a slow right turn lane from eastbound 89A to southbound 279. KV/KVI then constructed and paved an access road from highway 89A across the right-of-way to its shopping center parking lot. The Chamber granted KV/KVI an easement for this access and for certain drainage requirements to be constructed and maintained by KV/KVI as a park on the triangular portion of the right-of-way. *See* Appendix A.

By quitclaim deed recorded December 13, 1988, the Sniders conveyed to the Chamber any interest of the Sniders' in the right-of-way. The deed purported to grant a reversionary interest to defendant City of Cottonwood. Quitclaim deeds from KV/KVI and the Jennings' estate conveying any interest of theirs in the right-of-way land to the Chamber were also recorded on this same date.

In 1988, KV/KVI requested that the state abandon a portion of the intersection right-of-way amounting to the triangular portion occupied by the Chamber to provide access for traffic to KVI's Shopping Center. ADOT adopted Resolution No. 89–02–A–10 vacating the westerly triangular portion of the right-of-way. This resolution was recorded March 13, 1989. In vacating the right-of-way, ADOT made the determination for the purpose of compliance with Ariz.Rev.Stat.Ann. ("A.R.S.") section 28–1908 that plaintiff would have frontage and direct access on highway 89A. The resolution stated that the right-of-way was vacated to the adjoining property owner. By amended resolution of disposal recorded August 3, 1990, ADOT amended Resolution 89–02–A–10 and vacated the right-of-way to the fee owners as their interests appear of record.

In September 1989, plaintiff attempted to sell to Devco its abutting property and the abutting portion of the vacated right-of-way west of the KV/KVI constructed access road. The Devco title report required the recordation of a deed from the Chamber for the portion of the vacated right-of-way. This requirement resulted from the recordation by the Chamber of the quitclaim deed to the right-of-way from the Sniders. Plaintiff asserted a claim of ownership of title to the center of the right-of-way and requested that the Chamber quitclaim to it the portion of the right-of-way included in the Devco title report.

Plaintiff requested the Chamber and KV/KVI execute quitclaim deeds to the disputed

3. The deeds in plaintiff's chain of title all describe the parcel in reference to the right-of-way: [EX 25, at Book 1389, page 482]
130.1 feet to the Southerly 50 foot right-of-way line of State Highway 279; thence South ...
134.4 feet along said right-of-way line to a point of curvature; thence along said right-of-way line on a curve to the right, ... a distance of 255 feet....

land pursuant to A.R.S. section 12–1103. The Chamber made a similar demand on plaintiff. All of these demands were refused. In 1990 Devco canceled the escrow because of plaintiff's inability to deliver fee simple title to the property.

After a bench trial, the trial court made extensive findings of fact and conclusions of law. The trial court's conclusions of law may be summarized as follows: The trusts transferred all interest in the right-of-way property along with the abutting properties when the abutting properties were transferred. Plaintiff is the underlying fee holder of the right-of-way property from the centerline of the 279 right-of-way. All rights and interests of the Chamber and KV/KVI were terminated when ADOT vacated that portion of the easement. Therefore, the Chamber and KV/KVI are barred and forever estopped from claiming any right, title or interest in the disputed land. The trial court awarded judgment in favor of plaintiff and also awarded plaintiff its attorneys' fees and costs in the amount of $87,029.99 incurred against defendants KV/KVI and the Chamber.

After denial of their motions for new trial, the Chamber and KV/KVI both filed timely notices of appeal. This court has jurisdiction pursuant to Arizona Constitution Article VI, Section 9, and A.R.S. section 12–2101(B).

## II.  ISSUES

1.  Did the trial court err in ruling that the special warranty deed conveyance by the trustee of trust 17,273 conveyed all of the right, title and interest of the Sniders and trust 2231 in the right-of-way abutting the property?

2.  Did the trial court err in ruling that the first ADOT resolution vacating the right-of-way easement was effective, making the second resolution null and void, and resulting in the extinguishment of appellants' easement interests in the property?

4.  The parties have not contested on appeal the trial court's findings as to the specific location of the boundaries of the plaintiff's fee interest in the right-of-way—the centerline of the highway

## III.  DISCUSSION

### A.  The Underlying Fee Interest

Arizona follows an almost universal rule governing transfers of lands abutting roadways.

[I]f land abutting on a public way is conveyed by a description covering only the lot itself, nevertheless, the grantee takes title to the center line of the public way if the grantor owned the underlying fee, unless the contrary intention sufficiently appears from the granting instrument itself, or the circumstances surrounding the conveyance. This rule is one of construction, and applies in the absence at the time of the grant of any indication as to the grantor's intent in dealing with his interest in the public way.

*Torrey v. Pearce*, 92 Ariz. 12, 16, 373 P.2d 9, 12 (1962) (citations and footnote omitted).

The *Torrey* rule stems from the recognition that landowners tend to think of their holdings in terms of the area between the lot lines and tend to overlook any interests they may have in abutting roadways. *Id.* at 17, 373 P.2d at 12. Ordinarily right-of-way lands exist in long narrow strips or gores and are of no value to a seller when separated from the adjoining land. The rule's presumption is that if the grantors had been cognizant of their interest in an abutting roadway, they would have included it in their conveyance to the grantee, rather than retain it. *Id.* This rule also acts to promote certainty in the ownership and title of land, thereby discouraging litigation.

Through a straightforward application of this rule, the trial court concluded that trust 2231, the original grantor of the right-of-way easement, conveyed the underlying fee interest in the western half of the 279 right-of-way to trust 17,273. Then in 1972, trust 17,273 transferred this fee interest to plaintiff's predecessor in interest, thereby establishing plaintiff as the underlying fee interest holder in the abutting 279 right-of-way to the centerline of the right-of-way.[4]

right-of-way. Therefore we assume the trial court's findings on this issue are both adequate and correct.

Appellants argue that several exceptions to the general rule in *Torrey* should apply in this case. First, since the Sniders were beneficiaries under both trusts, the *Torrey* rule does not apply to the transfer of the parcel from trust 2231 to trust 17,273. Second, since the Sniders owned interests in adjoining lands and considering the size of the parcel in dispute, the rationale for the *Torrey* rule is undermined. Third, since the granting instruments describe the parcel by metes and bounds "to the highway right-of-way and then along . . . ," contrary intent is shown and the presumed intent should not apply. Fourth, subsequent acts of the parties show that no one intended to convey the fee interest underlying the 279 right-of-way.

■ Appellants' first argument is that since Transamerica Title conveyed the parcel to itself in 1972 as trustee of both trusts, and since the Sniders were beneficiaries under both trusts, the presumed intent rule of *Torrey* is inapplicable. Appellants have not supplied a single citation to any authority addressing this proposition of law. We do not agree with appellants' contention. Each trust was a separate legal entity. Therefore, we reject this argument.

■ In support of their second argument regarding an exception to the *Torrey* rule, appellants cite *Delph v. Daly*, 444 S.W.2d 738 (Ky.1969). In *Delph*, the transferor held other property situated so that it was evidence of an intent to extend an existing road on the transferee's property and continue it farther onto the transferor's retained land. In this case, appellants have given no explanation where the Sniders' retained properties are located or how their configuration implies that the Sniders intended to retain the fee interest in the property underlying the right-of-way. The *Delph* case simply has no application to the facts as presented in this case.

Appellants next argue that *Torrey* does not apply since the parcel of right-of-way land is of sufficient size to be valuable, therefore the grantor must have intended to retain it. We disagree with this argument. If value alone were sufficient to take the land out of the scope of the *Torrey* rule, this exception would surely consume the rule. We assume very few parties would be willing to bring a court action if the land in dispute were not valuable to someone. But under the exception to *Torrey* urged by appellants, this very fact of value which is the motivation that spurs a party to contest ownership, would be dispositive—implying the fee interest was not transferred. We reject this viewpoint.

■ Appellants urge the adoption of the minority view that a deed that provides a metes and bounds description which plainly has one boundary along the inner side of a highway excludes the highway area from the conveyance. Annot., *Description with reference to highway as carrying title to center or side of highway*, 49 A.L.R.2d 982, § 17 at 1023 (1956). We do not accept the minority view. Descriptions contained in a metes and bounds deed are usually provided by a surveyor or a title company, not the parties to the transaction. To regard a metes and bounds description as revealing anything more about the grantor's intent than any other circumstance surrounding the transfer only interjects more uncertainty of title into the situation. We find no circumstances surrounding the use of a metes and bounds description in the deed to evidence that the grantor intended to retain the right-of-way property any more than if a plat number or some other common description of the property were used. If the grantor had intended to reserve the rights to the property underlying the highway, simple words, such as "except for the land underlying the highway," included in the deed would have clearly shown such an intention.

■ Appellants finally argue that subsequent acts of the parties following the real estate transaction reveal the intent to retain the property underlying the right-of-way. As the trial court did, we reach precisely the opposite conclusion. First, the acts of the plaintiff/grantee are perfectly consistent with the premise underlying the *Torrey* rule— that land owners tend to think of their holdings as only the area within their property lines. The fact that plaintiff may not have had any inkling that it held the underlying fee in the right-of-way property until problems arose years after it acquired the property and after it had consulted an attorney in

no way detracts from the application of the *Torrey* rule. As for the argument that the Sniders' subsequent actions demonstrated their intent at the time of the original transfer, there is little legal relevance in the Sniders' actions after they were informed that they may own valuable land that they long thought was sold.

### B. Vacation of the right-of-way easement

Interpretation of a statute involves the resolution of legal rather than factual issues. *Chaffin v. Commissioner of the Arizona Dep't of Real Estate,* 164 Ariz. 474, 476, 793 P.2d 1141, 1143 (App.1990). Therefore, this court's standard of review is *de novo,* and the court is not bound by the trial court's conclusions of law. *Arnold v. Arizona Dep't of Health Servs.,* 160 Ariz. 593, 603, 775 P.2d 521, 531 (1989).

The State Transportation Board adopted two resolutions of disposal concerning the easement for the slip ramp. The first, Resolution 89–02–A–10, was adopted on February 17, 1989, and recorded on March 13, 1989. The second was an amended resolution of disposal and purported to amend Resolution 89–02–A–10 adopted on June 15, 1990, and recorded August 3, 1990.

If the first resolution is valid, the state had no authority to make any changes in the conveyance and the amended resolution has no validity. If on the other hand, the first resolution is invalid or a nullity, either the second resolution is valid or both attempts to dispose of the right-of-way are invalid.

A statutory method established for the abandonment or vacation of a highway is exclusive and must be followed. *City of Sacramento v. Jensen,* 146 Cal.App.2d 114, 303 P.2d 549, 554 (1956); *San Diego County v. California Water and Telephone Co.,* 30 Cal.2d 817, 186 P.2d 124 (1947); *Martin v. Klamath County,* 39 Or.App. 455, 592 P.2d 1037, 1039 (1979); *Poe v. Department of Transportation,* 42 Or.App. 493, 600 P.2d 939, 943 (1979); Annot., *Necessity for adhering to statutory procedure prescribed for vacation, discontinuance, or change of route of street or highway,* 175 ALR 760, 762 (1948).

■ ADOT's authority to dispose of a right-of-way is contained in A.R.S. sections 28–1902 and 28–1865. Under section 28–1902, ADOT may dispose of a right-of-way no longer necessary for a state highway as follows: (1) exchange the right-of-way for new right-of-way, A.R.S. section 28–1902(1); (2) sell the right-of-way under procedures set forth in A.R.S. section 28–1902(2); or (3) abandon the right-of-way to the city or county in which the roadway is located. Section 28–1865, entitled "Purchase, sale or condemnation of land for transportation purposes," provides for transfer of any right, title or interest in real property no longer needed for transportation purposes to other government agencies or by public sale.

The only authority to vacate a roadway is set forth in A.R.S. section 28–1902(3) and (4). These provisions grant to a city or a county governing board authority to vacate property to an adjacent property owner. ADOT, however, has no such statutory authority to vacate a state right-of-way to an adjacent property owner.

■ Plaintiffs argue that there is independent authority for ADOT to dispose of a highway easement found in A.R.S. section 28–1864(A). Under this section, in order to open, alter or vacate a highway, the director must submit a written report to the transportation board, which upon a determination "that the public convenience will be served," adopts a resolution authorizing the director to proceed thereon. Plaintiffs argue that this section authorizes ADOT to dispose of an interest in property by any means authorized by the transportation board so long as the requirement that "the public convenience will be served" is met. We disagree.

Section 28–1864(A) only prescribes a procedure to be followed by ADOT when opening, altering or vacating a state highway. Any method of disposing of property authorized by the board under this section must still be in accordance with the statutorily prescribed methods of disposing of the property. To hold otherwise would broaden ADOT's authority so as to give it almost unfettered discretion in these matters. Sections 28–1864, 28–1865, and 28–1902 were all initially added by the same act, Laws 1973,

ch. 146 § 69 effective July 1, 1974. We do not believe the legislature would enact the latter two sections with such detailed provisions only to be almost entirely nullified by the former.

In this case, neither an exchange, a transfer to another government agency, nor a sale of the right-of-way occurred. The governing body of a city or county may vacate such a right-of-way to an adjacent property owner pursuant to A.R.S. section 28–1902(3) but no such authority is vested in the state. The only statutorily authorized disposition is abandonment, in this case, to the City of Cottonwood because the roadway was within its corporate city limits. Thus, ADOT acted in excess of its limited statutory authority when it issued a Resolution of Disposal purporting to vacate the state's right-of-way to the "adjoining property owners as provided by law." In its Amended Resolution of Disposal dated June 15, 1990, ADOT sought to vacate the right-of-way to the fee owners as their interests appear of record. This amended resolution fails for the same reason as the initial disposal resolution: there is no statutory authority for such vacation, *not* because, as the trial court concluded, the first resolution was valid. It was not.

## IV. CONCLUSION

The judgment of the trial court is vacated. This case is remanded to the trial court with instructions to enter an order declaring both the ADOT Resolutions of Disposal to be null and void, and to conduct further proceedings as required consistent with this opinion.

All parties on appeal have requested an award of attorneys' fees and costs pursuant to A.R.S. 12–1103. Since none of the parties was completely successful on appeal, we decline to award fees and costs.

EHRLICH, P.J., and GERBER, J., concur.

## APPENDIX A

## DRAWING BASED ON TRIAL EXHIBIT 126

1957: SNIDERS CONVEY LAND TO TRUST 2231

1961: TRUST 2231 GRANTS 279 RIGHT OF WAY TO STATE

1969: TRUST 2231 SELLS PARCEL 44-A

1972: ALL LAND IN TRUST 2231 IS CONVEYED TO TRUST 17,273

1972: TRUST 17,273 SELLS WESTERLY ABUTTING LAND TO OESTMANN/THOMAS

1972: OESTMANN/THOMAS SPLIT WESTERLY ABUTTING LAND INTO PARCELS 45-A AND 45-C

1980: STATE GRANTS "EASEMENT" TO CHAMBER

1981: PLAINTIFF ACQUIRES PARCEL 45-C

1988: KV ACQUIRES PARCEL 56

1989: STATE VACATES PORTION OF 279 RIGHT OF WAY